MISSINSKIE, Respondent, vs. McMURDO, Appellant.

*September 26 — October 12, 1900.*

*Debtor and creditor: Fraudulent conveyances: Sales of chattels: Consideration: Change of possession: Instructions to jury: Burden of proof: Special verdict.*

1. Whether a bill of sale was fraudulent as to creditors of the vendor being at issue, it is *held* upon the evidence that the court should have submitted to the jury in the special verdict, in some form, the question whether a sufficient consideration passed between the parties to the transaction. Absence of a finding upon that point rendered the special verdict incomplete.

2. Under sec. 2310, Stats. 1898 (providing that transfers of chattels shall be presumed to be fraudulent unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession), the delivery and possession contemplated is not such a technical delivery as would give validity, *inter partes*, to a contract of sale, under sec. 2308, but such a delivery and change of possession that those familiar with the situation would naturally draw the inference of a change of ownership.

3. Thus, under said sec. 2310, it was error to instruct the jury that if plaintiff, who claimed a threshing machine under a bill of sale from his brother, alleged to have been made in fraud of creditors, hired his brother to continue to run the machine, and the brother acted as the servant or agent of the plaintiff, then the jury should find the "real possession" was in the plaintiff. Such instruction is diametrically opposed to the statute.

Missinskie vs. McMurdo.

4. Judgment having been rendered against plaintiff's brother, a thresh-
ing machine in the debtor's possession was seized on execution is-
sued on such judgment. Plaintiff replevied the machine, claiming
title under a bill of sale from his brother, but the transaction be-
tween plaintiff and his brother had not been accompanied by an
immediate delivery of the machine, followed by an actual and con-
tinued change of possession.　*Held* that, under sec. 2310, Stats.
1898, the presumption of fraud as against creditors arose, and that
the burden of proof rested on the plaintiff to remove that presump-
tion.

5. Relationship between the parties to a bill of sale, while not neces-
sarily a badge of fraud, is properly to be considered as a circum-
stance in deciding whether the transaction was in good faith or
with a hidden purpose of defrauding creditors of the grantor.

6. Where one of the questions of a special verdict was whether the
plaintiff ought to have known that the transactions whereby he
obtained title to the goods of a debtor were for the purpose of pre-
venting the debtor's creditors from or delaying them in collecting
their claims, a requested instruction to the effect that a sale is void
where the object of the debtor is to hinder and delay, if made to
one having knowledge of the intent, and that such knowledge need
not be actual, but will be inferred from facts and circumstances suf-
ficient to raise a suspicion, or put him on inquiry, informs the jury
of the legal effect of their answer to a portion of the special verdict,
and its refusal is not error.

7. It is not error to refuse to instruct the jury that, if a purchaser of
chattels knew the seller was largely indebted and pressed by cred-
itors, then it was his duty to see that the purchase price was applied
to the seller's debts; no such duty rests on the purchaser unless, by
reason of other facts, he is chargeable with complicity in a fraud
which would avoid the purchase.

APPEAL from a judgment of the circuit court for Outagamie
county: JOHN GOODLAND, Circuit Judge.　*Reversed.*

One Frank Missinskie, being considerably indebted, and
especially indebted upon a judgment for damages in favor
of one Shay, transferred to his brother, the plaintiff, a well
driller, thresher, and an engine used for running the same,
by written bill of sale, on November 24, 1894, remaining in
practical control and operation thereof as agent for *Phillip*,
as is now claimed. The consideration testified to by plaint-

iff and Frank was the satisfaction of an existing indebtedness of $450 owing plaintiff by Frank, and the payment of $600 in money at the time of the delivery of the bill of sale. Frank had substantially no other property. The evidence was conflicting as to the extent of plaintiff's knowledge of Frank's condition, the application of the $600 by Frank to certain of his creditors was in dispute, and generally the *bona fides* of both Frank and *Phillip* was controverted on the trial of this action. The defendant, as sheriff, levied an execution in favor of said Shay's judgment upon the threshing machine so transferred, and *Phillip* brought replevin.

The jury, by a special verdict, found the following facts: (1) Plaintiff, at the time of the bill of sale, knew that Shay had a judgment against Frank. (2) The bill of sale was not made for the purpose of preventing the creditors of Frank Missinskie from collecting any claims against him or delaying collection thereof. (3) Plaintiff did not know that Frank was indebted and pressed by his creditors. (4) Plaintiff ought not to have known that the bill of sale was made by Frank for the purpose of preventing his creditors from collecting claims against him or delaying the collection thereof. (5) Frank Missinskie did not continue in possession of the property after the same was made and down to the time of the levy by defendant. (6) Frank did not use and control the property for his own benefit and profit after the bill of sale the same as he did before.

Judgment was rendered in favor of the plaintiff for the possession of the property and for $100 damages resulting from deprivation of the use thereof. The defendant appealed.

*J. C. Kerwin*, for the appellant.

For the respondent there was a brief signed by *A. M. Spencer*, and oral argument by *John Bottensek*.

DODGE, J.    The first error assigned is the refusal of the trial court to submit questions requested by the defendant

as to whether or not Frank was indebted to the plaintiff at the time of the bill of sale in the sum of $450, and also whether or not $600 was paid at the time of the execution of the bill of sale. The court failed to submit to the jury in any way the question whether any consideration passed between the parties to that transfer. We are satisfied that error was thus committed. Without deciding whether the exact questions requested by the defendant ought to have been answered, it is obvious that the question of an actual and substantial consideration was one of the issuable facts. The plaintiff, in effect, affirmed it by claiming ownership under the bill of sale. The defendant in terms denied that there was any consideration therefor.

It is urged by the respondent that there was no conflict of testimony on this question. Suffice it to say that while both the plaintiff and his brother Frank testify categorically to the existence and cancellation of the $450 debt, and to payment of the $600, the cross-examination threw both of them into conflict with probabilities, and Frank into direct conflict with a disinterested witness, when he attempted to account for the disposition of the moneys so paid. As has often been said, fraud can seldom be proved by direct evidence. Its perpetrators work in the shadow and secretly, and, of course, by their own testimony deny it. In the majority of cases it must be ascertained from circumstances, from the manner of the parties, and by inference from such facts as the opposite party can lay before the jury. Enough of suspicious circumstances surrounded this whole transaction to have justified the jury in disbelieving the testimony of the interested parties, even as to the existence of the consideration claimed, and the court should have submitted either the questions asked or some other questions sufficient to dispose of the controversy as to consideration. Failure so to do, especially when his attention was called to the subject, was error. Absence of any finding on the subject

renders the verdict incomplete and insufficient to support judgment for plaintiff. *Bell v. Shafer*, 58 Wis. 223; *Dugal v. Chippewa Falls*, 101 Wis. 533, 537; *Bigelow v. Danielson*, 102 Wis. 470; *Baxter v. C. & N. W. R. Co.* 104 Wis. 307.

The second assignment assails the instructions given with reference to the change of possession. They are at some length, and need not be set forth *in extenso*. The court himself decided and declared that no actual physical change of possession took place, but nevertheless submitted to the jury the fifth and sixth interrogatories of the special verdict, and instructed them, in substance, that it was not a question of actual physical possession, which was conceded to have been retained by Frank Missinskie, but involved the question as to the "real possession," saying: "The explanation of it as given by the plaintiff is that he did not want to run the machine himself, and that he therefore hired his brother to take charge of it and run it in that way. If that is true, the possession remained in the plaintiff. If you find from the testimony that Frank Missinskie was working for his brother during this period of time I have mentioned here, and that, while he was in actual manual possession of the property, yet he was only acting as the servant or agent of his brother, then the possession was in the plaintiff, and you should answer the question, No; that the possession was not, while it was actually and apparently in the possession of Frank, yet, as I say, if you find that he was only acting as the servant and agent of *Phillip*, then the legal possession was *Phillip's*, and you should answer the question, No." This instruction is diametrically opposed to the rule over and over again laid down by this court, and indeed by substantially all courts, in applying the requirements of sec. 2310, Stats. 1898, providing that transfers shall be presumed fraudulent "unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the thing sold." The delivery and possession contem-

plated by this statute is not that technical delivery which gives validity *inter partes* to a contract of sale, in compliance with sec. 2308, but is such a delivery and change of possession that those familiar with the situation would naturally draw the inference of a change of ownership. The purpose of sec. 2310 is to require that parties who transfer property shall accompany the transfer by the public *indicia* of such change, and that if such *indicia* are absent they must be prepared to establish the *bona fides* of the transaction. *Manufacturers' Bank v. Rugee,* 59 Wis. 221, 226; *Schneider v. Kraby,* 97 Wis. 519.

In this connection, while not pointed out as an error, and therefore not ground of reversal, we think it well to call attention to the form of the fifth question, which renders it practically double and misleading to the jury. The query is whether Frank Missinskie continued in possession of the property " after the same [bill of sale] was made, and *down to the time of the levy by defendant.*" This was a period of something over three years, and it was apparent in evidence that during the last six or eight months of this period the machine in question, the thresher, had not been in use, and therefore had been left by Frank at the farm of a neighbor, so that it was not in his manual possession. The jury might well have understood that they were to answer this question, No, although the machine had remained in Frank's possession after the sale, and down to the period when, by reason of change of seasons, he had stored it on the farm of another. If this form of question were used, it should have been carefully guarded by explanation that his possession continued while the machine was so stored.

The appellant further assigns as error under his second classification the instruction given with reference to the second question of the special verdict, to the effect that as to that question and all other questions " the burden of proof is upon the defendant. The person who alleges fraud must

prove it.  He must prove it, too, by reasonably clear and satisfactory evidence.  So, as I say, the burden of proof rests upon the defendant.  If you are in doubt as to the second question or any of these questions, you should resolve the doubt in favor of the negative." Apart from detail criticisms (*Rindskopf v. Myers*, 87 Wis. 85) which might be made of this instruction, the whole general theory is wrong. The court had already declared, as above pointed out, that there had been no actual physical change of possession of this property, but had left the jury to decide whether there had been or not.  If sec. 2310, Stats. 1898, had not been complied with in that respect, the burden of proof, certainly as to the second question, was upon the plaintiff.  That section is too clear to leave doubt or to justify discussion.  If the transfer is not accompanied by an immediate delivery, and followed by an actual and continued change of possession, the presumption of fraud as against creditors arises, and the burden of proof rests upon the transferee to remove that presumption, which he can only accomplish by proving the good faith and honesty of the transaction.  The whole scope and theory of the instruction being erroneous, its details may be passed without comment.  Refusal of requested instructions to the converse of the rule laid down by the circuit court is also assigned as error, and for the reasons above stated must be held such.

The third error is assigned upon the refusal of the court to give to the jury certain instructions requested by the defendant; among others, an instruction to the general effect that relationship, while not necessarily a badge of fraud, was properly to be considered as a circumstance in deciding whether the transaction between the parties was in good faith or with a hidden purpose of defrauding creditors of the grantor.  Inasmuch as reversal must follow the errors hereinbefore pointed out, we need not decide as to the absolute accuracy of the instructions requested.  They are sub-

stantially an expression of the rule of law laid down by this court in *Bleiler v. Moore*, 88 Wis. 438, and that rule was a proper one to be given to the jury.

Further error is assigned upon refusal of the court to give to the jury the fourteenth instruction requested, to the effect that a sale is void where the object of the debtor is to hinder and delay if made to one having knowledge of such intent, and that such knowledge need not be actual, but will be inferred from facts and circumstances sufficient to raise a suspicion or put him upon inquiry. No error was committed in the refusal of this instruction, for it is obnoxious to the rule that it informs the jury of the legal effect of their answer to a portion of the special verdict. Further than this, we observe that the court gave the substance of the instruction as to constructive knowledge or notice of the grantor's intent in his instruction to the jury with reference to the fourth question. That instruction was, at least, sufficiently favorable to the defendant upon this subject, so that whether it may have been sufficiently guarded to protect the plaintiff's rights need not be considered. *Bleiler v. Moore*, 94 Wis. 385.

Again, error is asserted upon the refusal to give the eighteenth and nineteenth instructions requested, to the effect that the indebtedness from Frank to *Phillip* in the sum of $450 would not make the sale *bona fide* and valid, unless the plaintiff saw that the $600 cash was applied to pay the creditors of Frank Missinskie; and (19) "if you find that *Phillip Missinskie* knew when he took the bill of sale that Frank Missinskie was largely indebted and pressed by his creditors, then it was the duty of *Phillip* to have the $600 balance of purchase price applied to the payment of Frank's debts then owing from Frank to his creditors." Neither of these instructions so requested is so strictly accurate that error could be predicated upon their refusal. Nevertheless ideas are embodied therein which, in certain aspects of the case,

Missinskie vs. McMurdo.

should be communicated to the jury as bearing perhaps on the second question,— that as to the intent. The authority cited for the duty of a purchaser to see to it that the purchase price paid is applied to the creditors of the grantor is. *Avery v. Johann*, 27 Wis. 246. The duty was there said to exist as to a son who the court found received a conveyance from his father as a volunteer purchaser, and not as a creditor seeking to collect his claim, and with knowledge that the conveyance was made with intent to defraud the father's creditors. It has often been held that a mere volunteer, who is at liberty to purchase or not as he sees fit, will not be protected in exercising that option in favor of purchase where he knows or should know that the transferrer's intent is fraudulent as against his creditors, and if he so purchases he will be held to have so voluntarily aided the fraudulent purpose of his grantor as to participate therein, and, so participating, can escape the effect of that fraud in avoiding his conveyance only by seeing to it that the proceeds which he places in the grantor's hands are honestly applied to satisfy creditors from whom the transferred property is withdrawn. This is the extent to which the rule has been carried. No duty of seeing to the application of proceeds rests upon the purchaser, unless, by reason of other facts, he is chargeable with complicity in a fraud which would avoid his purchase. It is a method of escape from results which would otherwise fall upon him, and not a duty which the purchaser ordinarily owes. Bump, Fraudulent Conveyances, § 189. It will be seen that this condition is omitted from each of the instructions in question, the condition specified in the nineteenth being merely that the purchaser, *Phillip*, had knowledge that Frank was largely indebted and pressed by creditors. Knowledge of the financial condition of the person from whom one purchases is not knowledge of the fraudulent intent, though it may be evidence, more or less cogent, from which knowledge of that intent may be inferred, or a

duty to investigate arise, so that knowledge will be imputed in case of failure to so investigate. The instruction as requested would usurp the function of the jury, and compel them to treat as conclusive certain facts which are only persuasive and evidentiary. *Rindskopf v. Myers*, 87 Wis. 84.

The final assignment of error to the refusal of the court to direct a verdict for the defendant cannot be sustained. The case made by the evidence was one about which reasonable minds might well differ, and was therefore properly for the jury.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.

CASSODAY, C. J., took no part.