TAYLOR and another, Respondents, vs. TIGERTON LUMBER
COMPANY, Appellant.

*November 27—December 13, 1907.*

*Evidence: Admissibility: Admissions: Offers of compromise: Trial:
Reception of evidence: Account books: Absence of entries: Con-
version: Instructions to jury.*

1. In an action for the conversion of a quantity of logs, where
   plaintiffs claimed they had purchased the logs from a third
   party in consideration of the furnishing to the third party a
   carload of feed, it is prejudicial to defendant to exclude ques-
   tions, asked on cross-examination of the plaintiff and the third
   party, tending to show that in subsequent dealings the price of
   the feed was treated as a charge and indebtedness against the
   third party, since that would not only impugn the credibility
   of their testimony, but would stand as an admission on their
   part that they had not made the bargain upon which their title
   to the logs rested.
2. In such case it is not error to exclude questions seeking to show
   that plaintiffs had offered to accept pay for the feed, where
   such offers occurred in negotiations between plaintiffs, defend-
   ant, and the third party with reference to a compromise of the
   controversy involved in the instant action.
3. In such case inquiries as to whether the plaintiffs advised or
   forced the bankruptcy of the third party some months after
   the alleged conversion of the logs, whether the trustee in bank-
   ruptcy commenced a suit against defendant for the same logs,
   and as to the conduct and result of that suit, were irrelevant
   and properly excluded.
4. In such case it was prejudicial error to exclude inquiries as to
   whether plaintiffs, being creditors of the third party, did not
   advise and solicit his trustee in bankruptcy to institute such
   suit, since such inquiries bore on plaintiffs' credibility as wit-
   nesses, as well as on conduct by plaintiffs, themselves, incon-
   sistent with their ownership of the disputed logs, and tended to
   establish an admission that they had no title.
5. The trial court having excluded account books because satisfied
   they contained no entries having any reference to the transac-
   tions involved, whether the court should accept the parties'
   mere statement to that effect, or should have made a personal

examination, pertains to discretion, and where the record is confused as to the means taken to convince the court of the absence of relevant entries, there is no warrant for a conclusion of an abuse of discretion.

6. Where, in an action for the conversion of a quantity of logs, the defendant, concededly, had asserted dominion and control over the logs, its subsequent conduct, even after the commencement of the action, in appropriating the logs is admissible as giving color to such prior acts.

7. Where the fact that defendant intentionally appropriated a quantity of logs as its own and excluded plaintiffs therefrom, with knowledge of their claim, before suit was admitted, it is not prejudicial error to instruct the jury that defendant's acts constituted conversion instead of evidence of conversion.

APPEAL from a judgment of the circuit court for Shawano county: JOHN GOODLAND, Circuit Judge. *Reversed.*

Action for conversion of certain logs. In and prior to the year 1904 the plaintiffs had been merchants dealing in supplies for lumbering, had transactions with a firm of Peters & McNinch, who owned a sawmill and were also engaged in general lumbering, selling them supplies and buying logs of them, of which some remnants remained in the mill yard at the times here involved. In November, 1904, George Mc-Ninch, one of the firm, was engaged in getting out logs on his own homestead, and applied to the plaintiffs to supply him or the firm a carload of feed for those logs. One of the plaintiffs went to the locality and saw the logs, some if not all of which were still in the woods, although some may have been hauled to the mill yard, and, as plaintiffs claim, the parties then agreed that for that particular batch of logs they would give McNinch a carload of mixed feed. Accordingly, such a carload was sent to him and was used by the firm of Peters & McNinch. The logs were from time to time hauled to the mill yard of that firm by George McNinch. In December, 1904, the firm of Peters & McNinch entered into an agreement with the defendant to take their entire season's cut of logs, and apparently certain advances were

made thereon at the time of such agreement and later.    On January 11th the defendant sent a man, and Peters & Mc-Ninch then pointed out to him the logs which would go to the defendant under that agreement, and a bill of sale was made reciting the former agreement and conveying to the defendant "all of their entire stock of white pine, Norway pine, and other saw logs and timber cut and put into said first party's sawmill during the logging season of 1904 and 1905." Defendant claims that at this time both Peters and McNinch pointed out the logs which they would receive and that they included those which had been cut by George McNinch on his homestead.    It also claims, at that time, to have put a crayon mark on certain logs in each pile to indicate ownership.    Later, in March or April, plaintiffs caused the logs which they claimed, including the George McNinch logs, to be marked with their stamp.    Thereupon some question arose between them and the defendant, who asserted title to certain logs which are not made very definite, but included those from George McNinch, and thereafter the defendant caused to be placed upon such logs its own stamp and notified plaintiffs not to take them, threatening that if they did so it would bring suit against them.    Accordingly, some time in the spring of 1906 the plaintiffs brought this action charging conversion of the logs.    There is considerable indefiniteness in the evidence as to whether any part of them had been hauled away by defendant at the time of the commencement of the suit, although all had been before the trial.    There is also confusion and conflict in the evidence as to whether the defendant thus asserted ownership over and finally took away logs other than the George McNinch logs, and great dispute in the evidence as to the value.    The jury returned a verdict in favor of the plaintiffs, assessing their damages at $446.25.    Judgment was entered for the plaintiffs in accordance with the verdict, from which the defendant appeals.

For the appellant there was a brief by *Goodrick & Goodrick,* and oral argument by *E. J. Goodrick.*

For the respondents there was a brief by *H. J. Severson,* attorney, and *McFarland & Murat,* of counsel, and oral argument by *C. D. McFarland.*

DODGE, J. The trial of this case, as also the record in this court, is very confused and complicated. The errors assigned are forty-seven in number and go to multitudinous details of the trial. The situation would perhaps be simplified by a brief statement of the issues as we extract them from this record. Those issues are: First, did the plaintiffs purchase of George McNinch, for agreed price, namely, a carload of feed, certain ascertained logs cut by him on his own land, or did they sell that carload of feed upon the credit of Peters & McNinch? ·Second, if there was such purchase of the logs, was there a delivery sufficient as between the parties to transfer title? Third, was there a conversion of logs by the defendant? And, fourth, the value of plaintiffs' logs taken by the defendant. We do not discover any question of actual fraud if the first issue be resolved in favor of the plaintiffs' theory of a sale. There is no showing of insolvency on the part of George McNinch or even of the firm of Peters & McNinch. If a sale was made at all it was made for a presently paid consideration, the adequacy of which is not questioned, and there is no showing that at that time there was any contemplation of sale of the logs to the defendant or any one else. Hence the second issue is as above stated, and does not involve either the publicity of delivery or continuance of possession, absence of which by sec. 2310, Stats. (1898), is made presumptive evidence of fraud. *Missinskie v. McMurdo,* 107 Wis. 578, 83 N. W. 758; *George Walter B. Co. v. Lockery, post,* p. 81, 114 N. W. 120. Any such presumption is overcome beyond dispute. There was certainly some evidence on each of these issues sufficient

to go to the jury. We therefore turn to such of the assignments of error as seem to require consideration.

1. A large number of questions were propounded to plaintiffs on cross-examination, and to Peters and McNinch, tending to show that in subsequent dealings between those parties one or other of the plaintiffs treated the price of the carload of feed as a charge against and indebtedness of Peters & McNinch, substantially all of which was excluded. So far as the general purpose of that testimony was concerned it was clearly admissible. Plaintiffs having claimed that they had delivered the carload of feed at an agreed price for certain specified property purchased of George McNinch, it was material to show that they had at other times treated it inconsistently, for that would not only impugn the credibility of their testimony, but would stand as admission on their part that they had not made the bargain upon which their title rested, and the exclusion of evidence of such inconsistent conduct from consideration by the jury, we have no doubt, tended to prejudice the defendant. The only doubt in holding these rulings error necessitating reversal is whether it did not appear to the trial court that the only act of plaintiffs of this character consisted in delivering a written statement of account, the contents of which is not disclosed, but which defendant claims to have contained this car of feed as one of the items charged against Peters & McNinch. If that were so, it probably would not be error to exclude an attempt to prove by parol the contents of that writing without laying foundation, for the writing itself was the best evidence of what it contained. We are in much doubt whether this situation existed. There were questions broad enough to call for other acts on the part of the plaintiffs which witnesses were not allowed to answer. We may, however, forego the ultimate conclusion as to whether these rulings would necessitate reversal, since that must result upon other grounds, and we have probably said enough to indicate the course which

should have been pursued with reference to any competent evidence of the tendency claimed for this.

2. Another class of excluded questions sought to show offers by plaintiffs to accept pay for the carload of feed, thus indicating, as defendant claims, that they then treated it as indebtedness. Such offers occurred in a negotiation between the plaintiffs, the defendant, and Peters & McNinch with reference to compromise of the controversy involved in this very action, and, of course, so far as they formed a part of such negotiation were properly excluded. *Johnson v. Wilson,* 1 Pin. 65, 70; *State Bank v. Dutton,* 11 Wis. 371; *Richards v. Noyes,* 44 Wis. 609; *Gibbon v. Hughes,* 76 Wis. 409, 411, 45 N. W. 538.

3. Another class of excluded evidence consisted in inquiries as to whether the plaintiffs advised or forced the bankruptcy of Peters & McNinch some months after the alleged conversion of the logs. As to this we can see no relevancy whatever, and think it properly excluded. Questions also as to whether the trustee in bankruptcy commenced a suit against the defendant to recover some of these same logs, and as to the conduct and result of that suit, could have no relevancy to the present controversy. However, another set of questions inquired whether the plaintiffs, being creditors of Peters & McNinch, did not advise and solicit the trustee in bankruptcy to institute such suit. Such questions were all excluded. We cannot escape the conclusion that in these rulings was prejudicial error. It was conduct by plaintiffs themselves inconsistent with the ownership of the disputed logs and bore upon their credibility as witnesses in asserting the transaction of their purchase, and also might be deemed an admission that they had no title. The jury were entitled to be put in possession of such conduct and to give it such weight as to them seemed right, and they might have deduced therefrom a conclusion adverse to the plaintiffs.

4. Certain books of the plaintiffs were excluded because

the court was satisfied that they contained no charges having any reference to the car of feed or of the transactions here involved. Being so satisfied, the court was of course right in its ruling. Whether he was right in accepting plaintiffs' mere testimony to that effect, as defendant claims he did, or should have made an examination of the books himself, was largely matter of discretion, and the record is too confused, as to what means were taken to convince the court of the absence of relevant entries, to warrant conclusion of abuse of discretion. Much other cross-examination excluded by rulings now attacked was so nearly mere repetition in a trial quite unduly protracted that we think its exclusion was fairly within the discretion of the trial court.

5. Numerous assignments of error are based upon admission, over objection, of evidence of defendant's acts in hauling away and appropriating to its own use certain of the logs in question after the action was commenced. In this we discover no error. The defendant, concededly, had asserted dominion and control over the so-called George McNinch logs, and, verbally at least, excluded the plaintiffs therefrom before the suit was commenced. Its subsequent conduct in appropriating these logs to its own use was admissible, if at all necessary, as giving color to such prior acts. However, we do not deem any such ruling at all material on this appeal, for the defendant's own testimony seems to us to establish conclusively a conversion of at least the George McNinch logs before the commencement of the action, if they belonged to plaintiffs. With full knowledge that the plaintiffs claimed them, the defendant placed its regular mark upon them over that of the plaintiffs and notified the latter not to touch them under threat of legal proceedings. These acts clearly constituted an exercise of dominion over the logs adverse to the plaintiffs, and a purpose to that effect is rendered unquestionable by the fact that the defendant stands in this suit asserting that it did then own the logs and took them

as owner. The same reasons lead us to consider nonprejudicial an instruction that defendant's acts as testified to by the plaintiffs constituted conversion instead of mere evidence of conversion. The fact that the defendant intentionally appropriated the logs as its own and excluded the plaintiffs therefrom, with knowledge of their claim, before suit, is admitted, and this was conversion if the logs belonged to the plaintiffs. *Cernahan v. Chrisler,* 107 Wis. 645, 83 N. W. 778; *Lucas v. Sheridan,* 124 Wis. 567, 102 N. W. 1077; *Seivert v. Galvin,* 133 Wis. 391, 113 N. W. 680.

Other assignments of error are either so immaterial to the result or so induced by the peculiar events of the trial as not to be likely of recurrence that we may forego discussion of them here.

For the errors above mentioned in exclusion of evidence the judgment must be reversed.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.