HOEFFLER, Respondent, vs. CAREW and another, Appellants.

*April 20—May 8, 1908.*

*Sales: Intention to pass title: Question for jury: Fraudulent convey-*
*ances: Change of possession: Presumption of fraud: How over-*
*come: Adequate consideration: Canceling pre-existing debt:*
*Practice on appeal: General assignment of error: Evidence:*
*Identification of letters: Secondary evidence: Printed blank*
*form of mortgage: Unrecorded mortgage: Explaining failure to*
*record: Ownership of property: Declaration of third person:*
*Harmless error.*

1. Intention to pass title between vendor and vendee may exist and
   have effect in the absence of any change of possession whatever.
2. The vendee of a piano on which the vendor held a mortgage to
   secure notes given for the purchase price proposed to return it
   to the vendor in consideration of being released from further
   liability on the notes.  The vendor by letter accepted the pro-
   posal, stating that he would have the piano removed.  Before
   it was removed the vendee's creditors attached it.  *Held,* that
   the evidence was sufficient to warrant the inference of intent
   that title should pass to the vendor upon the receipt of the let-
   ter, which by its terms was final and signified an understanding
   that upon its delivery the transfer should be complete and the
   indebtedness of the vendee should thereupon cease.
3. Even if the intention to pass title was not so clear as to warrant
   the court in deciding it as matter of law, it was at least suffi-
   ciently inferable to warrant the submission of the question to
   the jury.
4. In an action of replevin by such vendor against the creditors of
   the vendee who had attached the piano while it still remained
   in the vendee's possession, the fact that there was no evidence
   of delivery and change of possession as required by sec. 2310,
   Stats. (1898), to rebut the presumption of fraud, would not of
   itself justify the court in directing a verdict for defendants
   on the ground that the sale was fraudulent.  The question
   would still be open whether the presumption had been over-
   come by other evidence.
5. Under a general assignment of error that the trial court erred in
   overruling defendants' motion for a new trial, appellant dis-
   cussed numerous specific acts of the trial court, each of which
   he asserted constituted error.  These acts consisted of adverse
   rulings upon the admission and exclusion of evidence, wholly

unrelated to one another, and the giving and refusal of instructions. *Held*, an inadequate compliance with Supreme Court Rule 10, requiring that "the brief of the appellant shall contain a concise statement of . . . the errors relied upon."

6. The question of identification of letters offered in evidence is *prima facie* for the court. Where there were other letters and signatures of the author, the authenticity of which was conceded, and which by comparison at least constituted some evidence from which the court could conclude as to the genuineness of the letter offered, a finding of genuineness was not so clearly wrong as to justify this court in setting it aside.

7. Where the original of a mortgage was proved to have been lost, a printed blank form, identical with that upon which the lost mortgage was written, was admissible to establish the printed portion of the lost instrument.

8. Where the vendor of a piano on which he held a mortgage agreed to take it back on the buyer's default and to surrender the notes given for the purchase price, his explanation of his reasons for not recording his mortgage was admissible as bearing on the issue whether the agreement was fraudulent as to the buyer's creditors.

9. Declarations as to ownership of property by one having no relations with the parties interested therein are not admissible against them.

10. Where a witness was permitted to testify fully to all that transpired between himself and A. and stated that the name of B. was never mentioned, it was not prejudicial error to exclude his answer to a question whether A. had ever mentioned B. as owner of certain property.

11. Instructions given with reference to plaintiff's rights as chattel mortgagee, even though erroneous, were rendered harmless by the finding of the jury negativing any such rights.

12. The presumption of fraud arising under sec. 2310, Stats. (1898), with respect to a sale of chattels not followed by change of possession, may be overcome by proof of payment of full and adequate consideration.

13. Cancellation of an existing *bona fide* indebtedness from vendor to vendee is tantamount to the payment of actual and adequate consideration.

14. The vendor of a piano on which he held a mortgage to secure notes given for the purchase price agreed to take it back after the buyer's default and to surrender the notes. Before change of possession pursuant to this agreement, the piano was attached by the buyer's creditors. In an action of replevin by the seller the court instructed the jury that if it was agreed be-

, tween the buyer and seller in good faith that the buyer should return the piano to the seller on his calling or sending for it and surrendering the notes the seller could recover. *Held*, that the omission to state that the transfer must not only be in good faith but also without intent to defraud the buyer's creditors was not prejudicial, since the presumption of fraud raised by sec. 2310, Stats. (1898), had been fully overcome by proof of the payment of actual and adequate consideration in the form of the cancellation of the buyer's indebtedness, and there was no evidence beyond the statutory presumption tending to establish fraudulent intent.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

Action of replevin for automatic slot piano under claim of absolute ownership in the plaintiff. The evidence tended to establish that for some time prior to July, 1906, one Lapine, a saloon-keeper at Fond du Lac, owned the piano as a part of his saloon fixtures, being indebted for most of the purchase price therefor to the plaintiff, which was secured by an unrecorded chattel mortgage. On July 13th Lapine, after a few days of negotiation, sold his saloon with stock and fixtures to one Bethke, not including the piano, which, however, remained in the saloon. About the 13th of July, while negotiations were in progress, and after Bethke had decided not to purchase the piano, Lapine told Bethke that he had closed a deal with the plaintiff to take back the piano, and that one of his men would come and get it, and, in that event, to deliver it to him, and he handed the key of the piano to Bethke, which enabled him to take out any money that accumulated in the piano. Bethke subsequently sold to one Groesbeck, but there is no evidence of any direction to Groesbeck about the piano. While or before the negotiations for sale to Bethke were in progress, on July 2, 1906, Lapine wrote plaintiff offering to surrender up the piano in satisfaction of his liability thereon and to pay freight on same to Milwaukee. On July 5th plaintiff wrote insisting that La-

pine should pay him at least $50 as a consideration of release. To this, on July 14th, Lapine replied, stating that he had sold out and could not pay the $50 and substantially reiterated the former proposal. Upon the 16th plaintiff replied:

"We have decided to accept your proposition, and herewith accept the instrument in settlement of any and all claims we have against you. We will have one of our men call and arrange to place the instrument with some other party when convenient, and, in case it should be necessary to move the piano before, you can advise me and the same will receive immediate attention."

There is some evidence that an agent of the plaintiff came to Fond du Lac in August and made some inquiry, and also came in contact with defendant *Bechaud Brewing Company* and informed its manager that the plaintiff claimed to have a chattel mortgage upon the property; that defendant brewing company, thereupon ascertaining that no chattel mortgage was on record, sued out an attachment, and caused the same to be levied upon the piano as the property of Lapine. Whereupon plaintiff brought this action. The court submitted to the jury two forms of verdict: First, as to whether the plaintiff had a chattel-mortgage interest therein; and, second, whether he had absolute ownership of the piano. The jury found absolute ownership and right of possession, also an amount of damages for detention; whereupon judgment was entered, from which the defendants appeal.

For the appellants there was a brief by *Husting & Husting,* and oral argument by *B. J. Husting.*

*O. H. Ecke,* for the respondent.

Dodge, J. 1. The first assignment of error is upon the court's refusal to direct a verdict for the defendants, the motion being predicated upon two contentions: First, that no delivery was shown sufficient to pass title from Lapine to plaintiff *inter sese;* second, that there was no proof of an

"immediate delivery followed by an actual and continued change of possession," absence of which, by sec. 2310, Stats. (1898), aroused a presumption of fraud in such transfer.

With reference to the first position, it is very fully established that the actual transition of title from one to another in pursuance of a contract of sale is almost entirely a matter of intention. Very slight acts of either surrender of possession by the seller or acquirement of dominion by the purchaser are often sufficient to evince such intention. Indeed the intention may exist and have effect in the absence of any change of possession whatever. *Sewell v. Eaton,* 6 Wis. 490; *Abraham v. Karger,* 100 Wis. 387, 76 N. W. 330; *Fromme v. O'Donnell,* 124 Wis. 529, 532, 103 N. W. 3; *Seivert v. Galvin,* 133 Wis. 391, 113 N. W. 680; *Taylor v. Tigerton L. Co.* 134 Wis. 24, 114 N. W. 122; *Warshawsky v. Rosengarten,* 134 Wis. 288, 114 N. W. 497. There is certainly enough in the evidence to warrant an inference of intent that title should pass from Lapine to the plaintiff upon receipt of the letter of July 16th, which, as appears by the quotation in the preceding statement of facts, was final in terms, and signified an understanding that upon its delivery the transfer should be complete and the indebtedness held by the plaintiff against Lapine should thereupon be canceled. Even if that intention were not so clear as to warrant the court in deciding it as a matter of law, it was at least sufficiently inferable to warrant the submission of the question to the jury.

The second contention, that there was no evidence of any such delivery and change of possession as is demanded by sec. 2310, would not of itself justify the court in directing a verdict for the defendants, for the question would still be open, either for the court or the jury, whether the presumption of fraud had been overcome by other evidence. *Taylor v. Tigerton L. Co., supra; Bullis v. Borden,* 21 Wis. 136.

2. The second assignment of error is that the court erred

in overruling defendants' motion for a new trial. This is very inadequate compliance with our Rule 10 that "the brief of the appellant shall contain a concise statement of . . . the errors relied upon," for under this general assignment the appellants discuss ten specific acts of the trial court, each of which they assert constituted an error. These acts consist of several adverse rulings upon the admission of evidence and several in exclusion of evidence, wholly unrelated to each other. Others are instructions given and the refusal of instructions requested. If counsel refrain from pointing out by proper assignments the specific errors upon which they rely, they must anticipate that the court may decline to consider them. However, in the present case we have examined such errors in detail and will proceed to state our conclusions thereon.

(a) A letter was admitted in evidence which appellants contend was not sufficiently identified. The question *prima facie* of identification was for the court. There were present other letters and signatures of the author, the authenticity of which was conceded, and which by comparison at least constituted some evidence from which the court could conclude as to the genuineness of the objected writing. His conclusion is not so clearly wrong that we can hold it error under the rule of *Hupfer v. Nat. Dist. Co.* 119 Wis. 417, 427, 96 N. W. 809.

(b) Objection was made to the use of a printed blank form to establish the contents of the chattel mortgage which plaintiff held. There was plenary proof of the loss of plaintiff's mortgage to open the door for secondary evidence as to its contents, and there was no impropriety in the use of a form testified to be identical with that upon which the lost mortgage was written to supply the fact as to the printed portion of the contents of the lost instrument.

(c) Explanation by the plaintiff of his reasons for not recording his mortgage was admissible by reason of their

bearing upon his actual intent to defraud creditors of Lapine.

(d) We can discover no materiality in the fact that one Groesbeck pointed out this instrument to the sheriff upon an inquiry for Lapine's piano. Groesbeck is not shown to have had any contact or relations with Lapine or the plaintiff, and no declaration of his could be competent as against them.

(e) Bethke was not allowed to answer a question, "Had Lapine ever mentioned that the Hoeffler Manufacturing Company was the owner of the piano?" This, if answered in the negative, would have been in direct contradiction of the evidence of Lapine offered by plaintiff to prove the surrender of the piano to Bethke to be held for the plaintiff. We can conceive no reason for excluding the testimony, but are unable to reach the conclusion that it was prejudicial in view of the fact that the same witness was allowed to testify fully to all that in fact transpired between himself and Lapine and to answer in the negative the question whether *Hoeffler's* name was ever mentioned.

(f) Instructions given with reference to plaintiff's rights as chattel mortgagee, even though erroneous, are rendered innocuous by the finding of the jury negativing any such rights.

(g) The most serious question of error arises upon the court's instruction to the jury that if they found that after Lapine had defaulted "it was agreed between *Hoeffler* and Lapine in good faith that Lapine should return back the piano to *Hoeffler* on his calling for or sending for it, and that the notes should then be surrendered back to Lapine," they should find for the plaintiff if they also found to exist certain facts in regard to change of possession of doubtful sufficiency to satisfy the statute. The fault pointed out in this instruction is that sec. 2310 requires that the jury be satisfied not only that the conveyance be in good faith, but also without intent to defraud creditors. It is claimed that the court was

requested to instruct as to this element of intent by being asked to charge the jury in the words of that section. There is much force in the contention that after the presumption of fraud has arisen by absence of an "immediate delivery, followed by an actual and continued change of possession," that presumption can be overcome only by satisfying the jury not alone that the transfer was in good faith intended by the parties to actually pass the title from one to the other so as to leave no trust for or ownership in the grantor, but also that no intent to defraud creditors by such transfer existed. In any case where the question is to be submitted to the jury, both of these ideas should be conveyed to them. In the present instance, however, it is not necessary to decide whether, by reason of the context, we may presume that "good faith" was used by the court and understood by the jury as excluding that form of bad faith which consists in an intent to divert property from the reach of creditors. It is established in this state that the presumption of fraud arising from absence of such delivery and continued change of possession is overcome *prima facie* by proof of the payment of actual and adequate consideration, and that cancellation of a debt may be such payment. *Griswold v. Nichols,* 117 Wis. 267, 94 N. W. 33. The question whether the contract of surrender or sale of Lapine's equity in this piano was entered into actually and in good faith and upon the consideration that the plaintiff should surrender and cancel the debt of $225 and some interest due him therefor was fairly submitted to the jury and answered in the affirmative by their verdict. We cannot doubt that for this second-hand piano in the hands of one withdrawing from business and having no further use for it, and which was remote from the plaintiff and had been subjected to many months of use, and which had commanded only the price of about $300 when originally sold upon terms highly inconvenient to the seller, the price of $225 was entirely adequate. The verdict in the light of the

charge found that this price was actually paid by cancella-
tion of the debt, and thus we think it became established that
the presumption of fraud arising from any inadequacy of
delivery was fully overcome.  In the absence of such pre-
sumption we are unable to discover any facts tending to es-
tablish a fraudulent intent.  It is pretty obvious that the
equity in this piano in case of enforcement of plaintiff's
chattel mortgage could have been of little value to Lapine's
creditors; that it could not have been sold either by judicial
process or otherwise so as to have enhanced in any consider-
able degree his ability to pay them.  Further, there is en-
tire absence of any showing that Lapine was indebted other-
wise than to the *Bechaud Brewing Company,* and that for a
claim for rent which was in some part in dispute.  Nor is
there any showing whatever but that Lapine had abundant
means to pay any and all his debts.  From the mere fact of
the existence of an indebtedness, as to the amount of which
there was some controversy, we do not think that the jury
could have been permitted to find an intent to defraud
creditors in this transaction, so that any error in this in-
struction must have been without prejudice.

   *By the Court.*—Judgment affirmed.