ESTATE OF MAXCY: HEANEY, Appellant, vs. SAWTELLE, Administratrix w. w. a., Respondent.

*May 7—June 3, 1952.*

For the appellant there was a brief by *Sigman & Sigman* of Appleton, and oral argument by *Samuel Sigman*.

For the respondent there was a brief by *Roberts, Roe, Boardman, Suhr & Bjork* of Madison, and oral argument by *Glenn D. Roberts* and *Walter M. Bjork*.

GEHL, J. The facts, an analysis of the testimony and the conclusions, the latter of which we adopt as expressing our own, are so well stated in the memorandum opinion of the learned trial judge, that we insert it here. It is as follows:

"The personal representative of the estate objected to the allowance of the claim upon the grounds that the instrument was not executed and delivered by the deceased; that if it was executed by the deceased it was materially altered without the assent of the deceased, and that if executed by the deceased the instrument is void for want of consideration.

"It is admitted in the brief on behalf of the claimant that he has the burden of proof to show by a preponderance of the credible evidence the execution, delivery, and consideration of the instrument.

"The original instrument was produced upon the trial and is admitted to bear the genuine signature of Isabel T. Maxcy.

"The instrument is written upon a printed receipt form upon which the words 'Received from' were never deleted or canceled.

"All of the writing on the instrument appears in the handwriting of claimant except the signature 'Isabel T. Maxcy.'

"All of the writing thereon is in lead pencil.

"The instrument is not in the usual and customary form of a promissory note, in which the name of the payee follows the promise to pay, and precedes the amount of·the note.

"It is unusual to put the name of the signer of the note in the body thereof, and in this connection it is noted that in the body of the instrument it is 'Mrs. Isabel T. Maxcy,' while on the bottom of the note, where it is signed by her, it is 'Isabel T. Maxcy.'

"It appears upon the face of the note that there was some overwriting noticeably the lower part of the 'I' of 'Isabel' and the lower part of the 'T' of her initial, also the letters 'x,' 'c,' and 'y' of 'Maxcy,' and the letter 'p' of 'promise,' also the cross on the letter 'T' at the beginning of the third line, and likewise beginning of the fourth line and then also in the word 'five' near the end of the fourth line.

"Although the instrument is claimed to have been written by the claimant at the maker's dictation, it is evident from an inspection of the instrument that it could have been composed only by one who was looking at the form at the time.

"The circumstances surrounding the making of this instrument, as testified to by the claimant, are unusually casual and informal considering the amount and importance of the document. According to claimant't [sic] testimony no one was present except the testatrix and the claimant at the time

this instrument was executed; there is no evidence that it was ever exhibited to her thereafter, or ever exhibited to and acknowledged by her in the presence of any other person.

"For some reason, not expressly stated, on January 9, 1950, the instrument was submitted by the claimant to the firm of Tyrrell and Doud, handwriting and questioned-document experts, of Milwaukee, who rendered him a written report. This report has not been received in evidence. Mr. Doud was called as a witness at the trial by the estate. The claimant offered a portion of the report in connection with his cross-examination of Mr. Doud, to which the estate objected unless the whole report was put in evidence. The objection was sustained by the court. However, it does appear in the evidence that the report was not favorable.

"Subsequently the claimant submitted the instrument to Mr. Schwartz of Chicago, who was produced as a witness at the trial, and testified for the claimant. The estate also had the instrument examined by Mr. Walter of Chicago. The instrument had been filed with the register in probate, pursuant to stipulation of the parties, in connection with deposition taken before the trial, and upon application the court directed the register in probate to take the instrument in question to Chicago where it might be examined by Mr. Walter. The register in probate was accompanied by the attorney for the claimant and he was present at all examinations of the instrument made by Mr. Walter.

"Both Mr. Walter and Mr. Doud testified that there are residuals of prior writing disclosed by infrared photographs which were introduced in evidence. They both agree that the date was formerly 44 instead of 46 and that there were other evidences of such residuals in the body of the instrument. Several residuals appear in the line ending with the printed word 'Dollars.' According to Mr. Doud there is evidence of the word 'no' above the word 'and' in said line, as well as other lines indicated in red upon objector's exhibit 'MMMM.' Mr. Walter also finds residuals in the line ending at the printed word 'dollars,' including the word 'no' or the word 'oo' over the word 'and.'

"The red marks upon the exhibit prepared by Mr. Doud indicate that there are evidences of prior writings in addition to the two mentioned consisting of a half circle to the left of

the 'M' of 'Mrs' in the second line of the instrument; two slanting lines in the same line, one extending below the marked over end of the 'l' in 'Isabel' and the other to the right thereof and not quite touching the lower part of the 'T' in the initial 'T.' Another loop similar to the loop of a 'g' below the 'c' in 'Maxcy' in the second line. In the third line a capital 'T' or 'F' through the first letter written in that line; a loop above the first part of the 'y' in 'pay;' a slanting line over the second half of the 'n' in 'ten;' the word 'no' over the 'and' following the word 'thousand' in line 3; a small

line to the left of the 'T' being the first letter in line 4; a line extending from the lower part of the 'e' of 'the' below the line also in said line 4; and a long v-shaped figure below the 'or' of 'order,' and what appears as a portion of a 'y' or 'g' extending below the line below the last 'r' in 'order;' also in the same line two loops as the loop of an 'l' over the 'y' of 'Heaney;' also a small loop between the letters 'e' and 'a' and a small line over the 'r' of 'years,' in the same line and a small line below the word 'from' being the last word in said line extending below the line between the letters 'r' and 'o.'

"As evidence of erasures, Mr. Walter calls attention to a break in the lithographed line just to the left of the thick finishing down stroke of the figure '4' of the figures '46' in the first line of Exhibit '1.' He also sees a break in the lithographed line of line 3 below the small letter 'n' of the word 'ten.' In addition to this, Mr. Walter finds what he calls remains of almost removed prior writing. I have already referred to his opinion that the date was originally 1944 instead of as it now reads '1946.' He also finds a curved stroke starting at the left and going upward and then a very sharp descending stroke going down on the top of the small 't' of the word 'to' on line 3. He also testifies that there is a shadow coming between the small 'l' of 'Isabel' and the initial 'T' on line 2. He also testified that there is a slight shadow below and to the left of the '1' of '10' in line 1. His finding above the word 'and' in line 3 has already been referred to. In addition he stated that there is a shadowy outline up at the top left corner to the right of the word 'no' that has an outline something like the figure '5' but it is not very distinct.

"Mr. Walter also testified that he used infrared photography to make the photograph of the document because that is the film that will pick up any almost erased or obliterated writing.

"Mr. Walter also testified that he examined a great many specimens of standards of the handwriting of Mrs. Maxcy in which the figures '4' or '44' appeared and gives it as his opinion that the '44' which existed under the present '46' was written in the handwriting of Mrs. Maxcy.

"The claimant's expert, Mr. Schwartz, examined the instrument after it was examined by Mr. Doud and prior to the

time of its examination by Mr. Walter. He testified that there was no evidence of any prior writing upon the instrument, but such marks as did appear thereon were made accidentally and inadvertently by the scrivener at the time of writing the instrument. He produced a photograph which he had had made with an ordinary lens. He produced no infrared photograph. He testified that he was not requested to make such a photograph.

"If there was prior writing upon this instrument, when and by whom was it erased? It could not have been prior to the time that this paper came into the hands of the claimant for the reason that he testifies it was a blank receipt form when it was handed to him. If it had been written on before, who would have had any occasion to have erased the writing therefrom with such care and skill as to leave no visible trace thereof when there was no other writing thereon? The claimant did not state, and does not now claim that this was a used piece of paper, but contends now, as he did at first, and as testified to by Mr. Schwartz, that there was no prior writing upon this instrument. If there had been no writing upon this instrument prior to the time it was given to him, as claimed by the claimant, then if there was any erasing done it must have been done by the claimant, or under his direction, because the instrument was in his possession from that time on. He does not testify to any changes or erasures made in the instrument at the time he claimed it was written by him and executed by the deceased. It is obvious that under these circumstances any erasures were not made and could not have been made with the knowledge and consent of the deceased.

"In corroboration the claimant offers the testimony of his wife to the effect that some time between the 10th day of December, 1946, and the 27th day of January, 1947, she thanked Mrs. Maxcy for having given the note to her husband. The note referred to by her was not identified as the note in question either by reference to the amount of the note, the date of the note, or the terms of the note. The only other bit of evidence was likewise the testimony of claimant's wife that on a certain day in February, 1947, she opened an envelope, received in the mail, which was addressed to her husband, and postmarked Milwaukee, and withdrew from

that envelope a letter marked for identification as Exhibit '9.' The original envelope in which this letter was received was not available and was not offered in evidence. This letter does not identify any particular note, but does refer to the fact that the purported writer had given the claimant a note, but it is not further described in any manner either as to date, amount, or any of the other terms or conditions thereof.

"This letter, Exhibit '9,' was entirely typewritten including the signature 'Isabel T. Maxcy.' Its admission as evidence was objected to at the time of trial and it was not admitted, but ruling reserved until the deposition of Mr. Wilkinson of Milwaukee could be taken. The testimony of Mr. Wilkinson does not positively prove that the letter is not that of Isabel T. Maxcy. It does disclose, however, that at all the time Mrs. Maxcy was in Milwaukee during the period when the letter purports to have been written that she stayed at the apartment of Mr. Wilkinson and that the driver of her car also stayed there. Neither side has seen fit to produce the driver of the car, nor to explain his absence. Under all of the circumstances, the court is of the opinion that the letter has not been sufficiently authenticated, and therefore its admission in evidence is hereby denied.

"The case therefore resolves itself into a determination as to whether or not there are residuals of prior writing upon the instrument upon which the claim is based. If there are no residuals, the testimony of the claimant would be sufficient to meet the burden cast upon him to prove the execution and delivery of the note. If there are such residuals, it impeaches his whole testimony, and it must be held that he has failed to establish by credible evidence the execution and delivery of the instrument which he has presented as the basis of his claim. If any instrument was executed at the time and place claimed, it was not Exhibit '1.'

"The testimony of Mr. Walter and Mr. Doud, together with the exhibits presented by them is clear and convincing of the fact that there was writing upon the paper, Exhibit '1,' and that it was erased prior to the writing which now appears upon said exhibit, and that evidences of or residuals of such prior writing are disclosed by the infrared photographs.

"This conclusion is not in any way shaken or disturbed by the testimony of the other handwriting expert presented by

the claimant. His examination was not as thorough as that of either of the other examiners. He made no infrared photograph because, as he explained at the trial, he was not requested to do so. There are too many evidences of prior writing to be explained as accidental or inadvertent. . . ."

The court found:

"6. That the personal representative of the estate has established by clear and satisfactory evidence that whatever was on the instrument at the time it was signed by Isabel T. Maxcy was materially altered after it was signed and that such alteration was without the assent of said Isabel T. Maxcy."

There was testimony not referred to in the court's opinion which supports the finding. Mrs. Sawtelle who acted as Mrs. Maxcy's secretary testified that the deceased never dictated even a simple letter. It was her habit to indicate her thoughts and leave it to the secretary to put them in proper form. Other notes signed by Mrs. Maxcy were executed upon regular note forms and never with pencil. Mrs. Maxcy was the owner of a number of rental properties. Receipts signed with pencil for rent were usually prepared by her in advance and were accessible to claimant who had spent much time in the home of deceased. Claimant carried the paper in his wallet for several months, a rather singular act for one to whom a note in the sum of $10,000 must have appeared to have unusual value, and an act which suggests that it may have been so carried as to smudge the paper and conceal the erasures.

The services performed by claimant and which he represents as consideration for the note were not of such value as to suggest that the deceased recognized an indebtedness therefor of as much as $10,000. He contends that the note was given in part for a loss which he sustained by reason of expenditures made by him in an effort to remodel a theater building for occupancy and operation by him under a lease

obtained from Mrs. Maxcy; the lease required him to make these improvements.

The interest of claimant in Mrs. Maxcy's estate is evidenced by his own admission that in 1945, 1946, and 1947 he drove her to an attorney's office in Ripon for the purpose of making a will and that later he went to the attorney's office and made a copy of one of the wills.

The decided preponderance of the evidence is not contrary to the finding and we may not disturb it. *In re Village of Chenequa*, 197 Wis. 163, 221 N. W. 856.

The alterations found to have been made by claimant render the note void. Sec. 117.42, Stats.

Claimant offered in evidence a typewritten letter bearing the typewritten signature of Mrs. Maxcy and dated February 3, 1947. It contains, among others, the recital: "After giving you the note you know how I feel about you." The offer was rejected and the ruling is assigned as reversible error. The letter was written upon Mrs. Maxcy's stationery and if it was written by her must have been written in Milwaukee while she was a guest in the home of her friend and business adviser, Mr. A. H. Wilkinson. Wilkinson testified that he did not have a typewriter in his apartment, had never had any of the stationery in the apartment, that he typed no letters for the deceased. It appears that she could not operate a typewriter. The envelope in which the letter is supposed to have come to claimant was not produced. Mrs. Maxcy's stationery was available to claimant. We agree with the trial court that there was not sufficient evidence of the genuineness of the letter.

". . . as there can seldom be a sole person knowing the circumstances of events . . . it is obvious that there are here multiple opportunities for a different authorship. Moreover, the other persons knowing the same facts are often persons hostilely interested, who thus have a motive for fabrication; and, if it were once laid down, as a general rule of law, that

the contents of a letter might be taken as evidencing its authenticity, too many would be found to take fraudulent advantage of this rule. It is true that, in the vast majority of transactions in every day life, persons do act upon just such evidence of authenticity and no more; and it might be supposed that the law could well follow this practice. But, in the first place, it is also true that frauds are constantly perpetrated in this very manner (as in obtaining goods by forging the name and letterheads of reputable merchants); and, secondly, there is little necessity for relying upon such evidence, in view of the ample opportunities of proof afforded by witnesses to handwriting.

"Accordingly, it seems generally conceded that the mere contents of a written communication, purporting to be a particular person's, are of themselves not sufficient evidence of genuineness." 7 Wigmore, Evidence (3d ed.), p. 605, sec. 2148.

There is not a circumstance to authenticate the letter except the fact that it was written upon Mrs. Maxcy's stationery. That is not sufficient.

"The generally accepted rule is to the effect that the mere fact that a letter (other than a reply letter) purports to have been written and signed by the person in question is insufficient to establish its authenticity and genuineness. This rule is especially applicable where the letter is typewritten or printed and the signature is attached by a rubber stamp or stencil, or is typewritten or printed. . . ." 20 Am. Jur., Evidence, p. 806, sec. 955.

Granting that there may have been error in the court's refusal to receive the letter, which we do not, we could not say that its conclusion was so clearly wrong as to permit us to hold it reversible error. *Hoeffler v. Carew,* 135 Wis. 605, 116 N. W. 241; *Hupfer v. National Distilling Co.* 119 Wis. 417, 96 N. W. 809; *Wagner v. Peiffer,* 259 Wis. 566, 49 N. W. (2d) 739.

Claimant offered a letter written him by the deceased on February 22, 1947, as evidence that she did on other occa-

sions close her letters with typewritten signatures. It is not evidence of that fact, for it appears from initials placed in pen writing under her typewritten signature that it was written and signed for her. There is not sufficient similarity between the two letters to indicate that Mrs. Maxcy was in the habit of closing her letters with typewritten signatures. It is also urged that the letter discloses performance by claimant of a task which was requested in the letter of February 3d. We find nothing in the second letter which suggests the inference that any favor requested in the first had been granted. There is nothing in it which serves to authenticate the first.

Claimant offered proof through claims filed by other persons for services rendered the deceased that she was in the habit of deferring payment of her debts. The court properly rejected the offer. The testimony would have been irrelevant; it had no connection with the question in dispute. *Kuenster v. Woodhouse,* 101 Wis. 216, 77 N. W. 165.

*By the Court.*—Judgment affirmed.