JEWETT vs. FINK and another.    (Cross Appeals.)

JUDGMENT NOTE, Action on.    *(1) Practice in such actions.    (2) By whom judgment to be signed.*
CHATTEL MORTGAGE.    *(3, 4) Defenses by creditors of mortgagor.    (5) Evidence.*

1. In an action in a federal circuit court for a district of this state, on a judgment note, there was filed with the declaration, note and warrant of attorney in the usual form, an answer signed by an attorney on defendant's behalf, confessing that the amount claimed was due on the note, and releasing all errors; and there was annexed to the papers an affidavit of plaintiff's attorney, stating that the sum claimed was due upon the note, and also stating the sources of affiant's information or knowledge, and the reason why the affidavit was not made by the plaintiff in person. *Held*, a substantial compliance with secs. 13, 14, ch. 140, R. S. 1858.
2. Such a judgment signed only by the clerk, but purporting by the record to have been rendered in open court, is *held* valid.
3. Whether or not the mortgagor of chattels, in trespass against him by the mortgagee for a wrongful taking and conversion of the property, could show in mitigation of damages that the mortgage was given and taken with intent to defraud creditors (a question not in this case), that defense may be made by judgment creditors or persons representing them.
4. Even where it appears that the chattels mortgaged were exempt from sale on execution, judgment creditors (or their representatives) may show, as against the mortgagee, in mitigation of damages, that the mortgage was not given to secure any debt, and that nothing is due or to become due thereon.
5. In trespass by the keeper of a stable for the taking from his possession, and conversion, of a horse, upon which he claimed a lien for its keeping, the defendants, being creditors of the owner of the horse, offered evidence of an attempted settlement of all accounts between such owner and the plaintiff, in which the latter made no claim against the former for the keeping of the horse. It appears that the parties were attempting at that time to *compromise* and settle their affairs; and the evidence was rejected on that ground.    *Held*, no error.
    RYAN, C. J., dissents from the judgment.

APPEALS from the Circuit Court for *Kenosha* County. The case is thus stated by Mr. Justice COLE:

" These are cross appeals from the same judgment.    The

action is trespass *de bonis*, etc., the subject matter of the controversy being a horse. The complaint consists of two counts. In the first, the plaintiff claims the property by virtue of a chattel mortgage given by the owner, one Price, purporting by its terms to secure the payment of $825.38 in six months thereafter, and authorizing the plaintiff to take possession of the horse at any time and sell the same, and out of the proceeds of such sale to satisfy said debt, and the expenses of sale and of keeping the horse. The plaintiff took and held possession of the property for more than two years and a half, when it was taken from his possession by the defendants. It is averred in the complaint that the horse was exempt from sale upon execution. In the other count the plaintiff claimed a lien upon the horse as stable-keeper, under the statute.

"The answer sets up that the defendants are respectively United States marshal and his deputy, and justifies the taking of the property under a *fi. fa.* issued out of the United States circuit court, wherein one Dow was plaintiff, and Price, the mortgagor, defendant; and alleges that the chattel mortgage under which plaintiff claims, was made with the intent to defraud and delay creditors, etc.

"On the trial of the cause, evidence was given, against the plaintiff's objection, which strongly tended to prove that the chattel mortgage was without consideration; that no indebtedness whatever existed on the part of Price to the plaintiff when it was given; that it was not intended to secure either a present or future indebtedness, but, as Price was expecting to remove from Wisconsin to Chicago, the mortgage was executed, under the advice of his attorney, solely for the purpose of placing the horse beyond the reach of Price's creditors. And it may be stated here that the answer shows, and indeed the fact is not controverted, that Price did not remove to Chicago as he intended doing, but has continued to be a resident of the city of Kenosha.

"The jury found a special verdict upon questions submitted

by the court. They found that the mortgage was not given to secure an indebtedness then due or to become due from Price to the plaintiff, but was executed with the fraudulent design or intent, on the part of both mortgagor and mortgagee, to hinder and delay the creditors of Price. They further found that nothing was due the plaintiff upon the mortgage for either principal or interest; also that Price, when he gave the mortgage, did not own any ox or oxen, mule or mules; thus, in effect, finding that the horse at that time was exempt.

" The plaintiff moved for judgment on such verdict, for the amount due by the terms of the mortgage and interest, which motion was denied. Judgment was then entered that as to the first cause of action the plaintiff take nothing; that as to the second, he recover $469 as damages, and costs. The plaintiff appeals because the court refused to give judgment on the verdict for the full amount of damages claimed by him. The defendants appeal because he had judgment for the expense of keeping the horse."

The appeal was submitted on the brief of *J. V. & C. Quarles* for the plaintiff, and briefs of *J. M. Stebbins* and *S. K. Dow* for the defendants.

For the plaintiff it was argued, *inter alia*, 1. That the affidavit filed with the warrant of attorney was insufficient *(Thompson v. Hintgen*, 11 Wis., 112); that the agent making such an affidavit must know the facts, and must disclose his means of knowledge *(McCabe v. Sumner*, 40 Wis., 386, 391), and must state the latter as fully as on verification of a complaint *(Crane v. Wiley*, 14 Wis., 658); that the affidavit does not show what part of the alleged facts rested on the " admissions of the defendant;" that the statements of the plaintiff to the affiant were not a legal means of knowledge; that the possession of the prior note, whose surrender is asserted to be the consideration of the note in question, would not support any inference, unless it were that the former note was still unpaid and an existing obligation; that there is no averment in the

affidavit that any sum is due on the note in suit, but only that the affiant is so informed by the plaintiff, and believes it to be true; that the affidavit should show the *consideration* (3 Wait's Pr., 687, and cases), which is not shown here, because it nowhere appears that the prior note was extinguished; and that the insufficiency of the affidavit may be taken advantage of in a collateral action. *Nichols v. Kribs,* 10 Wis.. 76. 2. That the pretended judgment on warrant of attorney was void because signed only by the clerk, and not by "a judge or court commissioner" as required by Tay. Stats., 1652, § 16. Freeman on Judgm., § 547; *Chapin v. Thompson,* 20 Cal., 681; *Remington v. Cummings,* 5 Wis., 138, 142; *Fairchild v. Dean,* 15 id., 206; *Wadsworth v. Willard,* 22 id., 238. A federal court cannot by any practice make that a judgment which is null by state laws. But the national courts are obliged to follow the state practice. R. S. U. S., § 914. Besides, the right of every citizen to have his day in court, and to be brought in by process, cannot be taken away except in the manner pointed out by statute. *Ins. Co. v. Brine,* 10 Ch. Leg. News, 283. 3. That the mortgage was valid as between the parties to it, even if given with fraudulent intent. *Clemens v. Clemens,* 28 Wis., 637, 646. It was error, therefore, to admit evidence on the part of defendants for the purpose of showing fraud in the mortgage, before they had shown themselves to be creditors. *Jones v. Lake,* 2 Wis., 210; *Eaton v. White,* id., 292; *Norton v. Kearney,* 10 id., 443, 452; *Bogert v. Phelps,* 14 id., 88; *Lincoln v. Cross,* 11 id., 91; *James v. Van Duyn,* 45 id., 512; *Damon v. Bryant,* 2 Pick., 411; *Decker v. Bryant,* 7 Barb., 182; *Pemberton v. Smith,* 3 Head, 18. 4. That the property being exempt, the mortgage could not be fraudulent as to creditors. *Bond v. Seymour,* 2 Pin., 105; *Dreutzer v. Bell,* 11 Wis., 114; *Pike v. Miles,* 23 id., 164; *Hibben v. Soyer,* 33 id., 319; *Carhart v. Harshaw,* 45 id., 340; *Dart v. Woodhouse,* 40 Mich., 399. 5. That there was nothing in plaintiff's claim of a lien as stable-keeper in-

consistent with his claim as mortgagee. Until sale, an interest or equity in the property remained in the mortgagor. *Stoddard v. Denison*, 38 How. Pr., 296. The mortgagee, in addition to his mortgage lien, may have an equitable lien from another source. *Armstrong v. McAlpin*, 18 Ohio St., 184. He may secure further advances by a second mortgage; and possession under the first does not militate against the lien of the second. The two liens gave plaintiff a right to hold the horse until both debts were discharged. And if the mortgage was void, the agister's lien would attach of course.

For the defendants it was argued, 1. That as it appeared from plaintiff's own testimony that he had advertised the horse for sale under the mortgage, while, as the jury found, there was nothing due him on the mortgage, this was a conversion, and a forfeiture of the lien claimed; and that the alleged lien for the keeping of the horse was also waived by plaintiff's failure to set it up as the ground of his refusal to deliver the horse upon defendants' demand. Phillips' Mech. Liens, 504–5, 509, 661–2, 667; *Vincent v. Conklin*, 1 E. D. Smith, 203; *Walther v. Wetmore*, id., 7; *Hanna v. Phelps*, 7 Ind., 21; *Dows v. Morewood*, 10 Barb., 183, 187; *Picquet v. McKay*, 2 Blackf., 465; *Legg v. Willard*, 17 Pick., 140. 2. That while state legislatures may direct in what formal way officers of state courts shall conduct their proceedings, they cannot control the forms and modes of proceedings of courts of the United States; that while, under R. S. U. S., § 914, it has been held that U. S. courts will conform, as near as may be, to the practice of the states in which they exercise jurisdiction, there is nothing in this that compels the officers of a federal court to enter up and sign judgments after the exact manner prescribed by the state statutes for the clerks and judges of the state courts; and that in any event the validity of the judgment could not be questioned in a collateral action in another court, to which the defendant in that judgment was not a party. 3. That under the findings of the jury, the mortgage was

merely colorable and wholly invalid; and that "when one having exempt chattels abandons or is about to abandon the use of them, on which the exemption rests, and, for the purpose of keeping them out of the reach of his creditors, makes a *colorable* gift or sale of them *for his own use*, the fraudulent intent will avoid the sale or gift as against the creditors." *Carhart v. Harshaw*, 45 Wis., 347.

COLE, J. The first error assigned on the part of plaintiff for reversing the judgment is, that the court below erroneously admitted the record of the judgment in the case of *Dow v. Price*, under which defendants justified. The judgment in the United States court was by confession upon what is called a judgment note. It is objected that there was no sufficient statement or affidavit of the amount due on the note to authorize the entry of judgment; but it seems to us the judgment was entered in substantial conformity to sections 13 and 14, ch. 140, Tay. Stats. The record shows that a declaration was filed, also an answer signed by an attorney on behalf of defendant, confessing the amount due as claimed in the declaration, and releasing all errors, together with the note and warrant of attorney authorizing a confession of judgment for the amount due on the note. The attorney for the plaintiff annexed to the papers his affidavit, stating that the sum of $1,728 was due upon the note set forth in the declaration; stating also the source or grounds of his information or knowledge upon the subject; and disclosing the reason why the affidavit was not made by the plaintiff himself. It seems to us this was a sufficient compliance with the statute.

But it is further objected that it does not appear that there was any judgment; that what purports to be a judgment was signed by the clerk alone. There is nothing in the record which warrants the assumption that the judgment was entered by the clerk alone; on the contrary, the presumption is that it was rendered in open court. The record itself so imports

upon its face, and that is conclusive upon the question. It was of course essential to the defense set up in the answer to show a valid judgment, and this, we think, the defendants did. It follows, therefore, that there was no error in admitting the record in evidence for the purpose of showing that the defendants represented a creditor of Price, and had the right to inquire into the validity and consideration of the mortgage under which plaintiff claimed the property.

The second error assigned is, that evidence tending to show fraud in the mortgage was improperly admitted, against the plaintiff's objection. This position is obviously founded on the assumption that the defendants were mere tortfeasors, who had no right to inquire into the validity of the mortgage; for the very able counsel did not deny, nor would he wish to be understood as controverting, the principle, elementary in the law, that a creditor may question a transfer of property made by his debtor in fraud of his rights. But the counsel says that the mortgagor, Price, would not be heard to impeach the mortgage for fraud in the transaction; that as to him the instrument is valid. It is frequently the case that a conveyance good as to the parties to it is voidable as to creditors. This the counsel does not deny.

We are not entirely clear, however, that if Price himself were defendant in this action, it would not be competent for him to show, in mitigation of damages, that the mortgage was not an existing obligation, because originally given with intent to defraud creditors. But, however that may be, the defendants, who stand in the place of and represent a creditor of the mortgagor, may attack the mortgage. This is certainly so unless, on account of another fact which we will notice, they are precluded from attacking the mortgage or showing that there was really nothing due upon it. The jury in effect found that the horse was exempt when the mortgage was given, and we have already said it appears that Price had continued to reside in Kenosha. But the question was not submitted, nor

did the jury find, whether, if the mortgage were avoided for fraud or upon any other ground, the horse would still be exempt in the hands of the mortgagor. Price was made a witness by both sides. In answer to a question asked him by plaintiff, he testified that when the mortgage was given he did not own, nor has he since owned, any other horse, mule or mules, ox or oxen. It is proper, likewise, to say in this connection that the same witness testified on the part of the defendants, without objection, that when this action was commenced, the plaintiff was indebted to him in a sum exceeding $400, and this testimony was not denied by the plaintiff. Indeed, so far as Price is concerned, he waives all exemption, and seems to be willing that the horse should be sold to satisfy the excution held by defendants. But the contention is that, as the horse was exempt, the element of fraud was entirely out of the case, and it was the duty of the court below to disregard all of the verdict which touched that question, and to have given judgment for the plaintiff on the first count in the complaint. As a matter of law, it is said the court should have held that the mortgage could not be fraudulent; that although the intent, together with all the facts necessary to make the transfer fraudulent under other circumstances, were found or admitted, yet the law will ignore them all if the property is exempt, inasmuch as fraud cannot be predicated upon a transfer of property specifically exempt from execution. Conceding for the argument that this position is correct, still we do not well see how the court would have been justified in giving judgment on the first count, in view of the finding that neither principal nor interest was due on the chattel mortgage. As we understand the verdict, this finding refers expressly to the $825.38, the mortgage debt named.

There is ample evidence in the record, as it now stands, to sustain such a finding, that nothing was due the plaintiff on that claim; that there never was any actual liability or obligation on the part of the mortgagor to pay that debt, or, if there

ever had been, that such liability had been extinguished and discharged. But, moreover, the bill of exceptions does not purport to contain all of the testimony, and there may have been conclusive proof upon this point. In this action, between the plaintiff and the creditor of the mortgagor, we can see no legal objection to showing in mitigation of the damages that the mortgage debt was extinguished, or did not in fact exist, even if the horse, when the levy was made, was exempt by law from sale on execution; for upon what principle is the plaintiff allowed to recover more damages than he has actually sustained by the levy and sale under the execution? It being, therefore, competent to show these facts in mitigation of damages, we must assume on the record that the evidence abundantly supported the ninth finding in the special verdict, that no amount was due the plaintiff upon the chattel mortgage set out in the complaint, for principal and interest. It follows from these views, that the third and fourth errors assigned on the part of the plaintiff for a reversal of the judgment are overruled.

In respect to the other appeal, we are inclined to think the judgment as it stands is correct. The jury found that Price was indebted to the plaintiff for keeping and caring for the horse at his stable from September 24, 1874, to May 12, 1877, in the sum of $469. It would certainly be an admissible construction of the mortgage to say that it secures to the plaintiff a lien for any expense he might incur for keeping the horse while the same was in his possession. There could be no objection that we can perceive to such a stipulation in the mortgage. The jury have found upon the evidence what it was worth to keep the horse, and their finding upon the question cannot be disturbed. It is true, Price testified that the plaintiff was not to be paid anything for keeping the horse, but was to keep him for his private use in driving. But it was for the jury to say, upon the conflicting statements of the witnesses, what the real agreement was; and the mortgage itself would

seem to sustain the claim of the plaintiff. While the witness Price was being examined by the defendants, he stated that he had three several interviews with the plaintiff, when both brought all their account books in order to effect a settlement of their matters. It was proposed to show by the witness that on these occasions the plaintiff rendered all his accounts against him, but made no charge for keeping the horse. The testimony was objected to, and ruled out.

It is now insisted by defendants' counsel, that the evidence was admissible to show that the claim of the plaintiff for keeping the horse was an afterthought. I have had some doubt whether the ruling of the court upon this point was correct; but I infer, from what is said in the briefs of counsel, that the reason why the testimony was excluded was, that it appeared that the parties at the time were attempting to compromise and settle their affairs, and that that was the ground for excluding it. I am not clear but in that view the testimony was inadmissible.

We think the judgment upon both appeals must be affirmed. *By the Court.* — Judgment affirmed on both appeals.

RYAN, C. J., dissented.