JOHN E. DEWOLF COMPANY, Respondent, vs. HARVEY and
another, imp., Appellants.

*October 28—November 16, 1915.*

*Real-estate brokers: Commissions: Sale on terms other than those*
*proposed: Right to recover* quantum meruit: *Evidence: Compe-*
*tency: Offers of settlement: Sufficiency: Questions for jury:*
*Special verdict: Discretion: Instructions to jury: Contracts: Mu-*
*tuality: Appeal: Harmless errors.*

1. Conversations showing offers made before suit in furtherance of
   an attempted settlement are not admissible in evidence against
   the party making the offers.
2. The admission of such a conversation in evidence in an action by
   a real-estate broker to recover an agreed commission was not
   prejudicial to defendants who, although they denied liability on
   express contract, admitted that they were liable on *quantum*
   *meruit,*—the offer being consistent with such admission and
   tending to support defendants' contention rather than that of
   the plaintiff.

3. Defendants having agreed that if plaintiff would procure a purchaser and consummate a sale of land upon specified terms they would pay a certain commission and would also pay such sum as plaintiff might incur for attorneys' fees not exceeding $2,000, and plaintiff having procured a corporation to purchase the property, but upon terms differing from those specified, evidence that defendants paid a law firm $1,500 for services in examining abstracts and drawing the papers necessary to complete the transaction does not show that defendants accepted the sale as a performance of the agreement on plaintiff's part, it not appearing that the attorneys' fees which defendants therein agreed to pay were for services of that character.

4. From the fact, however, that defendants accepted the offer of the purchaser procured by plaintiff, together with evidence as to a conversation between the parties prior to such acceptance, the jury might reasonably infer that defendants accepted the offer as a satisfactory substitute for the terms proposed by them and as a fulfilment of the agreement on plaintiff's part.

5. Where an issue of fact is squarely raised by the pleadings and there is a request for the submission of a question covering such issue in the special verdict, it is, generally speaking, prejudicial error to refuse to submit such question; but where the proposed question does not cover facts specially pleaded a proper instruction covering the matter is a sufficient substitute therefor.

6. Thus, where a real-estate broker sued for an agreed commission on the sale of land and defendants claimed that the sale was not made in accordance with the terms of the agreement, it was not error to refuse to submit a proposed question as to whether the conduct of the parties showed that it was their intention that defendants should pay to plaintiff the reasonable value of the services rendered, the court having covered that matter in his charge.

7. Where a broker upon receiving a proposal to pay him a commission for procuring a purchaser for property on certain terms proceeded to do the work which it was contemplated would be done by him, such action on his part constituted an acceptance and gave mutuality to the contract.

8. Where the charge was sufficiently full and complete and fairly advised the jury as to the law by which they should be governed, there was no error·in refusing to give requested instructions, even though they were correct as abstract propositions of law.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

Plaintiff brings this action to recover from the defendants commission alleged to be due it as a broker under the terms of certain written proposals dated March 1, 1913, which are as follows:

*"John E. DeWolf Company,* Milwaukee.

"Gentlemen: In consideration that you, on or before March 10, 1913, procure some person or corporation to purchase from the present owners the following described property: [here follows description] for the sum of four hundred and thirty-five thousand dollars ($435,000), to be paid in cash, or by permitting the present mortgage of seventy thousand dollars ($70,000) to remain on the premises, and the balance in cash, I to have the option to take said mortgage up or let it run as I may elect:

"I agree that either I, or some corporation that I shall organize for the purpose, will take from the purchaser or purchasers of said premises, so procured by you, when they have obtained title as aforesaid, a ninety-nine-year lease of the same, running from the date of the delivery of the deed, which lease shall contain the following conditions among others:

"The rental to be paid under such lease shall be six per cent. (6 %) upon the purchase price for the first two (2) years of the term, and thereafter the rental shall be five and one-half per cent. (5½ %) per annum upon the purchase price for the remainder of the term, all rent to be payable quarterly, in advance;

"And in addition, the lessee shall pay all taxes, assessments and insurance premiums, of every nature, when due.

"The lease shall obligate the lessee to erect upon the property a modern fire-proof commercial building, costing not less than three hundred thousand dollars ($300,000). The building to be commenced within five (5) years from the date of the delivery of the deed, and to be completed within seven (7) years of the date of the delivery of the deed.

"The obligation to build the building shall be secured by the bond of a solvent surety company, authorized to do business in Wisconsin, acceptable to the lessor, in the amount of at least two hundred thousand dollars ($200,000); and further, by the signature, by way of guaranty, of some individual or individuals who severally or jointly can qualify to the

satisfaction of the lessor for a financial responsibility of two hundred thousand dollars ($200,000) over and above all their present obligations.

"The said lease is to contain a provision under which the lessee may repurchase said property at any time before the expiration of ten (10) years after the date of the lease, and upon six (6) months' notice, for the sum of four hundred and thirty-five thousand dollars ($435,000), plus five per cent. (5 %) of said sum, and after ten years (10) from the date of the lease and before fifteen (15) years from the date of the lease, for the sum of four hundred and thirty-five thousand dollars ($435,000), plus seven and one-half per cent. ($7\frac{1}{2}$ %) of said sum, upon six months' notice.

"The lease shall contain other provisions common to ninety-nine-year leases, and shall accord, in so far as the terms thereof shall be applicable, in form, to the ninety-nine-year lease now in effect upon the Plankinton House property in the same block.

"The title which is procured to this property must be a title in fee and free from incumbrances, except as to the mortgage hereinbefore recited, and to the rights of persons in possession under present leases, the terms and nature of which I am informed of.

"Dated Milwaukee, Wisconsin, March 1, 1913.

      "(Signed)        GEORGE A. HARVEY.   (Seal.)"

"*John E. DeWolf Company*, Milwaukee.

"Gentlemen: In consideration that you consummate all matters and transactions which will result in the agreement which I have with you, of which a copy is annexed, being fully carried out, I will, upon the completion thereof, pay you the sum of twenty-five thousand dollars ($25,000), to be in full for all your services, commissions and expenses with this exception: I will pay such sum as you may actually incur for attorneys' fees not exceeding two thousand dollars ($2,000) as a part of your expenses.

"I will also take care of the payment of any commission that Carl Remeeus may be entitled to.

"Dated Milwaukee, Wisconsin, March 1, 1913.

      "(Signed)        GEORGE A. HARVEY."

The amended complaint alleges that plaintiff, after delivery to it of said instruments, procured a corporation, the

Ticonic Investment Company, to enter into negotiations with the defendants for the purchase of the property in question; that as a result of such negotiations the Ticonic Investment Company submitted to the defendants, through plaintiff, a proposal modifying in certain particulars the terms contained in said proposals of March 1st, and that defendants accepted such modification without further notice to plaintiff and without objections thereto, and pursuant thereto the Ticonic Investment Company purchased the lands and paid the owners therefor and gave to the defendants a ninety-nine-year lease which they accepted in accordance with and for the rentals specified in said instruments, with certain modifications which defendants agreed upon without notice to plaintiff, and that defendants thereafter accepted the consummation and carrying out by said Ticonic Investment Company of its said proposal in a manner agreeable to the defendants as a performance of plaintiff's agreement with said defendants; that no part of the commission payable under said instruments has been paid, except that defendants have paid attorneys' fees which were incurred and have paid all commissions, if any there were, payable to Carl Remeeus. The material difference between the agreement proposed and the one consummated will be stated in the opinion.

The defendant *George A. Harvey* answered in his own behalf and in behalf of the copartnership Harvey Brothers, admitting that plaintiff procured a corporation to purchase the land described in said instruments, but alleged that the procuring of the purchaser and the making of such purchase was not in pursuance of or in accordance with said proposals. The defendant *Somers* answered separately, the material allegations of his answer being the same as those contained in the answer of the defendant *Harvey*. A single question was submitted to the jury, which, with the answer thereto, is as follows:

"Was the arrangement as finally completed and carried out by the Ticonic Investment Company taken and considered by

the parties to this action as a fulfilment of the contract Exhibit 4 in evidence?    A.  Yes."

From judgment entered on such verdict in favor of plaintiff and against the defendants this appeal is taken.

For the appellants there was a brief by *Miller, Mack & Fairchild,* and oral argument by *James B. Blake* and *E. S. Mack.*

*Lawrence A. Olwell,* for the respondent.

BARNES, J.    It is not now asserted that the proposition (which for convenience will hereafter be referred to as a contract) submitted by *Harvey* to the plaintiff was literally complied with by the latter, although the original complaint was framed on that theory.    The claim that there was a substantial performance was made by an amended complaint, but was not submitted to the jury, and the sole issue submitted for determination was whether or not the arrangement as made and carried out by the Ticonic Investment Company was taken and considered by the parties to this action as a fulfilment of the contract between plaintiff and defendants, it being conceded that the contract signed by *Harvey* was made in behalf of his codefendants as well as himself.

The fact that the counter offer of the Ticonic Investment Company was accepted, taken in connection with three items of evidence, is relied on by respondent to support the verdict returned.    One of these items of evidence related to a conversation in the office of Carey, Upham & Black, another to a conversation in the Plankinton House, and the third to a payment of attorneys' fees by defendants to Carey, Upham & Black.

The general contentions of the appellants are:  (1)  The Plankinton House conversation was incompetent.    (2)  Excluding the conversation, the evidence is insufficient to support the finding of the jury.    (3)  If the evidence pertaining to this conversation was properly received, still the verdict is

without support in the evidence.     (4) The court erred in re-fusing to submit a question to the jury asking whether or not there was an understanding between the parties that defend-ants would pay plaintiff a reasonable compensation for its services instead of the sum named in the contract.     (5) That the question submitted did not fairly state the issue, if there was any.     (6) That the court erred in instructing the jury. (7) That the court erred in refusing to give certain requested instructions.

In considering the main question in the case (*i. e.* the re-fusal to grant a nonsuit or direct a verdict) the evidence most favorable to the plaintiff need only be considered where there is a conflict, the jury having found in plaintiff's favor.

It must be conceded that the question whether the evidence sustains the verdict is a close one, so close that, if incompetent evidence was received which was prejudicial to the defend-ants, a new trial should be ordered unless we are satisfied that the competent evidence offered was insufficient to support the verdict, in which contingency the complaint should be dismissed.

The parties are not entirely agreed as to what transpired at the Plankinton House talk, but the variance is not very material.     In substance the defendants wanted to know what arrangement could be made about commission provided they concluded to go on with the deal.     Plaintiff's officers asked them what they had to offer, whereupon they said they would pay $10,000.     This the officers of plaintiff refused to con-sider, saying in effect that they would insist that the entire amount be paid.     Defendants said they would not pay $25,000; that they would drop the deal first.     To this plaint-iff's officers replied that they had better drop it then.     De-Wolf insisted that plaintiff had performed its contract, while *Harvey* insisted that it had not.

The position of defendants is that this talk related to a compromise settlement and that conversations showing offers

made in furtherance of attempted settlements cannot be received in evidence. This question would seem to be ruled in defendants' favor by repeated decisions of this court: *State Bank v. Dutton,* 11 Wis. 371; *Richards v. Noyes,* 44 Wis. 609; *Jewett v. Fink,* 47 Wis. 446, 455, 2 N. W. 1124; *Gibbon v. Hughes,* 76 Wis. 409, 411, 45 N. W. 538; *Taylor v. Tigerton L. Co.* 134 Wis. 24, 29, 114 N. W. 122; *Tobin v. Nichols,* 156 Wis. 235, 237, 145 N. W. 659.

However, we may not reverse unless the error was prejudicial. If harm resulted to the defendants, it must be because the offer might be construed as an admission of liability on the contract to the extent of $10,000. It is because settlements are favored in the law, and because parties would refrain from making offers if these offers were to be used against them as admissions, that the rule referred to has been adopted.

If the only question in the case were liability or nonliability under the contract, it might be difficult to say that this evidence was not prejudicial to the defendants. But this was not the only question in the case. The defendants, through the efforts of the plaintiff, had secured an investment of $400,000 upon terms which presumably were highly advantageous to them, although not as much so as those recited in the written contract set forth in the statement of facts. Whether acting from motives of fair dealing or of expediency, they did not take the position that they were freed from all liability. On the contrary, they insisted that they were liable for the reasonable value of the services rendered. They insisted that the question of their liability on *quantum meruit* should be submitted to the jury by a specific question covering this issue. The court charged the jury that if it appeared "that it was the intention of the defendants to pay and the plaintiff merely to accept merely what the services were reasonably worth, and not according to the terms of the contract, then you should answer the question in the nega-

tive." In defendants' brief it is said that they "maintained throughout the trial that the conduct of the parties, after it became apparent that plaintiff could not produce a purchaser in accordance with the terms of the original proposal, evidenced an understanding that the plaintiff was to be paid the reasonable value of its services for such service as it actually rendered in procuring a purchaser, but not the commission offered in the original proposal."

With defendants taking the position that they were not liable on contract but were on *quantum meruit,* it is difficult to see wherein they were prejudiced by the evidence of the Plankinton House conversation. They emphatically denied liability on the contract, but offered to pay a much lesser sum. This offer was consistent with an admission of liability for the reasonable value of the services. Plaintiff's officers admitted a refusal to pay the contract price. It seems to us that this evidence was beneficial to the defendants as supporting their *quantum meruit* theory, and did not tend to support the claim of the plaintiff that defendants had agreed to pay the sum named in the contract for the work actually done. If this be correct, then no error was committed in receiving the evidence that could be considered prejudicial to the defendants. Under the circumstances shown, we think there was nothing about this offer of settlement that was helpful to the plaintiff's case, and that it must stand or fall on the other testimony and the inferences that might properly be drawn therefrom.

Before discussing the other two items of evidence referred to, it might be well to direct attention to some other facts in the case. The defendants had an option on the Mariner property for $300,000, and actually bought it for $290,000. The original proposition made to the plaintiff company called for an advance of $435,000 on this property, which, however, was still further secured by a contract to erect a $300,000 building on the premises within seven years, on which de-

fendants were to take a ninety-nine-year lease. · This contract was in turn to be secured by a surety bond guaranteeing that the building would be erected, and conditioned in the sum of $200,000. If the original proposition was carried out, the defendants would have the sum of $435,000 at once available for purchasing the Mariner property and commencing work on the building. Under the proposition of the Ticonic Company the sum of $285,000 only was immediately available. The remaining $150,000 was to be applied in payment of the last items of cost of the building to be erected. Because of this change, the amount of the surety bond was reduced to $100,000. If the first proposition had been carried out, the defendants would have been relieved of the necessity of advancing $5,000 of their own money to buy the Mariner lot, would have had cash on hand to pay the plaintiff's commission without drawing on their own funds, and would have had $120,000 left with which to start building operations. In lieu of this they were to be paid $150,000 at a later date to apply on the last cost of the building, and were relieved of the necessity of furnishing a $200,000 bond, one for one half of that sum only being required, on which, however, there was a saving of $1,000 a year in premiums. These are the substantial differences between the proposition originally made by defendants and that finally made by the Ticonic Company and accepted by defendants. The importance of the change insisted on by the Ticonic Company would depend largely on the ability of the defendants to provide ready money from other sources to pay the $30,000 referred to and to provide the initial sum requisite to carry on building operations. Although the contract sued upon was dated March 1, 1913, and the deal was completed a short time thereafter, there had been correspondence in reference to the proposed deal between plaintiff and *Harvey* as early as November, 1912, but pending a decision of the case of *Upham v. Plankinton,* 152 Wis. 275, 140 N. W. 5, defendants declined to bind themselves by making an unequivocal proposition.

In the $25,000 offer made to plaintiff it was stated: "I will pay such sum as you may actually incur for attorneys' fees not exceeding $2,000 as a part of your expenses." After the deal was consummated defendants paid the law firm of Carey, Upham & Black $1,500 for legal services. The plaintiff argues that this sum was paid in pursuance of the above offer and strongly tended to show acceptance of the Ticonic Company's proposition as a compliance with the contract in suit. The evidence is rather meager as to why the money in question was paid. Mr. Richardson, of the firm of Carey, Upham & Black, gave the only evidence bearing on the subject. He testified:

"At the time of this transaction the firm name of our present organization was Carey, Upham & Black, the legal end of it. I was familiar at that time with the charges which the firm made in relation to or on account of attorneys' services rendered in connection with this Mariner transaction and I know what the charges of the firm for those legal services . . . were."

The amount was stated to be $1,500, which sum was paid by *Mr. Harvey*. Presumably the services or some of them were for examining abstracts and drawing the contract, lease, surety bond, and other papers necessary to complete the transaction in reference to the Mariner property. This is a fair enough inference from the testimony offered. The evidence is of doubtful importance because of failure to show that the attorneys' fees which *Harvey* agreed to pay plaintiff were for services of this character. It does not satisfactorily appear that had the Ticonic Investment Company been willing to accept the terms of the *Harvey* proposition the plaintiff would have been liable for attorneys' fees for services rendered in drafting the necessary documents to finally consummate the deal.

The finding of the jury must rest almost wholly on the conversation in Upham's office and on what was subsequently done. The jury might believe from the evidence that after

Mr. Upham stated just what he was willing to do, *Harvey* said to plaintiff's officers: "This was entirely different from my understanding, and my first understanding of any change, but I will attempt to fill as per the terms laid down. . . . I will have to get in touch with Cleveland, and we will try to fill on this. . . . You fellows [plaintiff's officers] will have to help me out with a little money." The Upham proposition was accepted and the deal was consummated without plaintiff having been requested to furnish any money to aid in carrying it through. The plaintiff brought the defendants and the Ticonic Company together. Defendants were unable to get just what they wanted or just what they offered to pay $25,000 for, but they were offered something that might suit their purposes almost if not quite as well. They were getting all the money needed to buy the Mariner property except $5,000, and were to get the remaining $150,000 to pay on the building, and they were saving $1,000 a year on the cost of a surety bond. They might of course refuse to accept the Ticonic offer and escape liability to the plaintiff. They might also treat it as a satisfactory substitute for their own proposition. They elected to accept, and we think the jury could reasonably infer from such acceptance, coupled with the testimony as to what transpired between the parties in the Carey, Upham & Black office, that the defendants accepted the contract offered as a fulfilment of the contract which plaintiff undertook to perform.

The defendants requested the court to submit to the jury the question whether the conduct of the parties showed that it was their intention that defendants should pay to the plaintiff the reasonable value of the services rendered by the plaintiff. The court refused to submit such a question to the jury, but, as before stated, charged the jury that if they found the intention of the parties was that plaintiff should be paid the reasonable value of its services, then the question submitted should be answered in the negative. It is the contention of

the appellants that the requested question presented an issuable fact upon which they were entitled to have a specific finding by the jury; that it was error to refuse to submit the question, and that such error was not cured by the instruction given.

It would, we think, have been more fair to the defendants to have submitted the question, because it would have presented the issue more forcibly to the jury than it was presented. It was discretionary with the trial judge, however, to cover the matter with his charge, rather than by a question in the special verdict. This court has said in many cases that where some issuable fact is squarely raised by the pleadings and a question is requested covering such issue, it is error to refuse to submit such question, and, generally speaking, prejudicial error. The recent cases in this court dealing with the subject are reviewed in *Wawrzyniakowski v. Hoffman & Billings M. Co.* 146 Wis. 153, 131 N. W. 429. This decision was subsequently followed in the case of *Sadowski v. Thomas F. Co.* 157 Wis. 443, 146 N. W. 770.

Where, however, the proposed question does not cover facts specially pleaded, an instruction such as was here given is a sufficient substitute therefor. *Vogel v. Herzfeld-Phillipson Co.* 148 Wis. 573, 579, 134 N. W. 141. See, also, *Steber v. C. & N. W. R. Co.* 139 Wis. 10, 120 N. W. 502. There was no such issue raised by the complaint or by the answer in this case as defendants sought to have submitted to the jury by the proposed question, and we therefore hold that it was not error to refuse to submit the question.

The question is raised that the alleged contract between the plaintiff and the defendants was unilateral, and, not having been performed by the plaintiff, there could be no recovery thereon. The testimony showed that after receiving the defendants' proposition the plaintiff proceeded to secure some person who would purchase the Mariner property under the conditions set forth in the proposition. It proceeded to do

the work which it was contemplated would be done by it, and such action on its part constituted an acceptance and made the contract mutual thereafter.    *Schoenmann v. Whitt,* 136 Wis. 332, 117 N. W. 851, and cases cited.

A number of exceptions were taken to the refusal of the court to charge the jury as requested by the defendants, and some exceptions were also taken to the charge as given.    The requests to charge are twenty-five in number and occupy more than twelve printed pages.    A special verdict consisting of only one question was submitted.    The court properly charged the jury on the burden of proof, and, further, that there must be a meeting of the minds of the parties evincing an intention on the part of both that the proposition of the Ticonic Investment Company should be considered as a compliance with the terms of the plaintiff's proposition, in order to warrant the jury in answering the question in the affirmative.    As before stated, the jury was further instructed that if it was the understanding of the parties that plaintiff was to be paid the reasonable value of its services instead of the price stipulated in the contract, the question submitted should be answered in the negative.    The charge of the court was quite full, and fairly advised the jury as to the law by which it should be governed in answering the question.    A number of the requested instructions are correct enough as abstract propositions of law, but we think there was no error in the charge as given and that it was sufficiently full and complete and that therefore no error was committed by refusing to give such of the requested instructions as were refused.    It would serve no useful purpose to discuss these assignments of error in detail.

*By the Court.*—Judgment affirmed.