WORSLEY, Respondent, vs. JOHNSON, Receiver, Appellant.

*June 1—September 25, 1920.*

*Railroads: Accidents at crossings: Contributory negligence: Instructions as to instinct of self-preservation: Special verdict: Duplicity: Presumption.*

1. The question whether the driver of a team, who was killed in a collision between his wagon and a trolley car at a railroad crossing, his view being obstructed, was negligent in not stopping and looking, is for the jury.
2. An instruction, in such case, permitting the jury to consider the instinct of self-preservation and the disposition of men in their sober senses to avoid danger, is *held* not to have misled the jury in considering the evidence as to contributory negligence, and was not prejudicial, though the circumstances did not tend to raise the inquiry whether decedent acted recklessly.
3. It must be presumed on appeal that the jury heeded the court's instructions in deliberating on the issues of negligence charged, and unanimously agreed as to one or more, and that the negligence found was the proximate cause of the collision.
    ESCHWEILER, J., dissents.

APPEAL from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Affirmed.*

Plaintiff brought this action to recover damages for the death of her husband, Franklin W. Worsley. Decedent was killed at about 7 o'clock in the evening of September 19, 1913, at a point on the outskirts of the city of Racine where a public highway known as Asylum avenue crosses the right of way of the defendant company. At the point where the accident occurred the railway tracks run north and south, or very nearly so, while Asylum avenue runs in a northeasterly and southwesterly direction, crossing the tracks at an angle of approximately thirty degrees. The crossing in question is located at the south city limits of Racine, the crossing being partly within and partly without the city. Deceased had been to town with a load of oats and was on his way home, traveling south on Asylum avenue, when the vehicle in which he was driving was struck by a north-bound limited car of defendant company and he was killed.

The complaint alleges that the defendant is a railroad corporation; that Asylum avenue is one of the principal thoroughfares leading into the city of Racine, much frequented by travelers, and that defendant's electric cars cross it at frequent intervals during the day and night; that the car which collided with the wagon of the deceased was being operated at a high and dangerous rate of speed—about fifty miles per hour; that defendant was also guilty of negligence in operating its road and running its cars over this crossing without having any gates or flagman there, or any proper electric bells or other devices installed, as required by the statutes of the state. Plaintiff further asserts that deceased was exercising due care at the time of the accident. Damages are claimed in the sum of $10,000.

The defendant admits that Asylum avenue is an important highway, but denies all negligence charged against it and alleges contributory negligence on the part of the decedent.

The case was tried before the court and a jury. A special

verdict was returned by the jury to the effect that there was a want of ordinary care on the part of the defendant in the operation of its car at the time and place in question; that such want of ordinary care was the proximate cause of the death of plaintiff's husband; that no want of ordinary care on the part of the deceased proximately contributed to cause his death; that plaintiff's damages were $4,000.

Judgment was entered in accordance with the verdict, from which judgment defendant appeals.

For the appellant there was a brief by *Simmons & Walker* of Racine, and oral argument by *John B. Simmons* of Racine and *Edgar L. Wood* of Milwaukee.

For the respondent there was a brief signed by *Storms, Foley & Beck,* attorneys, and *William W. Storms,* of counsel, all of Racine, and oral argument by *William W. Storms.*

The following opinion was filed July 3, 1920:

SIEBECKER, J. The principal controversy presented on this appeal pertains to the question of decedent's contributory negligence. It is stated in appellant's brief: "It is conceded that upon the issue of defendant's negligence the state of the evidence was such as to make the question one for the jury." An examination of the evidence shows that this question was clearly one for determination by the jury. It is, however, strenuously urged that the undisputed facts of the case convict the decedent of contributory negligence and that the jury's finding that decedent was free from negligence proximately contributing to the injury should have been set aside by the court.

The rule declared in *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593, 84 N. W. 823, is invoked as controlling in this case. It is there said respecting the duties of persons approaching railroad crossings:

"The rule here is that the duty to see those dangers that are in plain sight and hear those that are plainly within hearing by paying proper attention thereto, is just as absolute as

is the duty to look and listen for them, and that a jury cannot be permitted to say that a person, called upon to perform that duty, did not see or hear such dangers, and base a verdict thereon."

There is a conflict in the evidence as to whether or not the usual and customary crossing signals, namely, the sounding of the whistle and the ringing of the crossing bell, were given, and whether the crossing lights near the track were in operation. There is also a conflict in the evidence as to whether or not the motorman applied the brake to slacken the speed of the car after the team was in his view on the crossing and whether or not the car was approaching the crossing at a high and dangerous rate of speed. These issues of fact, upon the evidence adduced, were proper inquiries for determination by the jury, and on appeal it must be assumed that the jury resolved them most favorably to plaintiff's claims. In this view the case presents the following conditions: The decedent approached the crossing from a northeasterly direction at about 7 o'clock in the evening of September 18th (a clear evening); he was riding on a lumber wagon, sitting on a seat elevated on a double box; the crossing lights were not lit; no warning signals were given of the approaching car, which was going at a speed of about fifty miles per hour with a headlight that cast a light about 1,000 feet forward on the track; the team was traveling at the rate of about four miles per hour. It appears that the ground in the vicinity of the crossing is practically level and open. One hundred and sixty feet from the Asylum avenue crossing is defendant's station for boarding and alighting from trains; it is located nine feet from the easterly rail of the track on which the car in question was approaching from the south; the station building is eight feet in width and twelve feet long north and south; the trolley poles are six feet to the east from the nearest rail of the track in question and are from a foot to sixteen inches in diameter, placed 1,000 feet apart. About 228 feet to the

south of Asylum avenue is an apple tree, approximately twenty-five feet high, its branches spreading about twenty-four feet and being well branched close to the ground, while 270 feet farther south are two more apple trees of like size. These trees are forty-eight feet from the east track. South of the Durand road crossing, which is 650 feet from Asylum avenue, the railroad tracks curve so that a car cannot be seen from the Asylum avenue crossing until it is near the Durand road crossing. The decedent, approaching the track from the northeast, had his view of an approaching car intercepted by the station building and the trolley poles from a point forty-six feet from the east rail on this crossing until he reached the inner line of the trolley poles. From points eastward of this forty-six-foot intercepted view decedent had an unobstructed view of approaching cars from Asylum avenue for a distance of about ninety feet. If decedent looked for the approaching car within the ninety-foot distance it is not a certainty that he could have seen the car approaching because of the curve of the track. If the jury believed that he looked and saw no car approaching while traveling this ninety feet, then can it be said as a matter of law that he was guilty of contributory negligence in continuing his course upon the forty-six feet of obstructed view before reaching the track, without stopping to ascertain if a car was coming?

It is strenuously argued that the brilliancy of the headlight on the approaching car must have been visible to him after the car passed the curve south of Durand road because it cast its headlight to the crossing for a distance of from 600 to 800 feet. In view of the conditions surrounding. him while he traveled the last forty-six feet before reaching the track, it is not clear that ordinary prudence required him to stop and look for approaching cars. These surrounding conditions distinguish the instant case from *Groesbeck v. C., M. & St. P. R. Co.* 93 Wis. 505, 67 N. W. 1120, and similar cases where the person approaching the crossing had

an unobstructed view of tracks and approaching trains for considerable distances before entering the zone of danger. We are persuaded that the court properly submitted the issue of decedent's contributory negligence to the jury for determination.

Appellant urges an exception to the following instruction:

"There is no direct evidence as to what deceased did or failed to do in approaching the crossing at the time in question. You are entitled, under the circumstances, to consider the natural instinct of self-preservation and natural disposition which leads men in their sober senses to avoid danger and to preserve life."

While the facts and circumstances disclosed do not tend to raise the inquiry whether decedent acted in reckless disregard of imminent danger, still this instruction upon the issues submitted to them cannot be held to have misled the jury in considering the evidence material to the issue of decedent's contributory negligence, and hence was not prejudicial to the appellant's case. Among the questions requested by defendant to be included in the special verdict is the following: "Was the crossing-signal device operating as the car in question approached the Asylum avenue crossing?" It is urged that the general question submitted, namely, "Was there any want of ordinary care on the part of the defendant in the operation of its car at the time and place in question?" does not inform the court with sufficient certainty upon what grounds the jury found the defendant guilty of negligence, and that the requested inquiry should have been submitted to aid the court in interpreting the verdict.

The court in connection with the issues of the defendant's negligence specifically called attention in its instructions to the various alleged negligences of the defendant and informed the jury that they were to consider all of them in answering the question, thus bringing to their attention the issues of negligence presented by the pleading and the evi-

dence.   It must be presumed that the jury heeded these in-
structions in their deliberation on these issues and that they
unanimously agreed that the defendant was negligent in one
or more of the respects charged in the complaint, and that
the negligence found was the proximate cause of the col-
lision.   We discover no reversible error in the record.

*By the Court.*—The judgment appealed from is affirmed.

The following opinion was filed July 10, 1920:

ESCHWEILER, J. (*dissenting*).   The defendant requested,
which request was denied, that the following question be
made a part of the special verdict: "Was the crossing-signal
device operating as the car in question approached the Asy-
lum avenue crossing?"

The issue of fact presented by such specific question was
a very material one in this action.   It formed the substance
of one of the specific allegations in plaintiff's complaint of
defendant's negligence, and one which it thereupon became
incumbent upon plaintiff to prove.   It was also important
on the question raised by defendant as to the possible con-
tributory negligence of the deceased.   For, manifestly, if
the signal device described in the testimony was in operation
at this crossing as the deceased approached it, and in spite
of the warning that would be given to hearing and sight by
the operation of such device he continued to drive upon and
across the track in the face of the approaching car, such act
might well have been held contributory negligence as a mat-
ter of law.   *Puhr v. C. & N. W. R. Co.* 171 Wis. 154, 176
N. W. 767; *Meissner v. Southern Wis. R. Co.* 160 Wis.
507, 509, 152 N. W. 291.

The importance of this particular question is also em-
phasized by the fact that under the uncontradicted testi-
mony of plaintiff's own witnesses, after deceased had
reached a position on the crossing where, if he had looked,
he could not help but see the on-rushing car, no attempt was

made by him to hasten the speed of his team or to do anything whatsoever to avert the disaster.

The majority opinion holds in substance that, under the instructions given by the court on the other questions of the special verdict, the jury must necessarily have considered in their deliberations on those questions this precise question and have determined that it should be answered No, although there were allegations and proof of other grounds upon which the negligence of defendant could have been predicated.

In view of the vital importance that such question had both as to defendant's negligence and that of possible contributory negligence on the part of the deceased, I think it was prejudicial error to refuse to submit such question.

In former decisions, too numerous to cite here, the rule of law has been declared explicitly, forcibly, and repeatedly, that where specific acts of negligence are charged in the complaint, denied by defendant, and litigated on the trial, a special verdict should contain specific questions covering these alleged acts. A reference to a few of such decisions must suffice. *Heddles v. C. & N. W. R. Co.* 74 Wis. 239, 258, 42 N. W. 237; *Lee v. C., St. P., M. & O. R. Co.* 101 Wis. 352, 362, 77 N. W. 714; *Rowley v. C., M. & St. P. R. Co.* 135 Wis. 208, 216, 115 N. W. 865; *Wawrzyniakowski v. Hoffman & Billings M. Co.* 146 Wis. 153, 164, 131 N. W. 429; *John E. DeWolf Co. v. Harvey,* 161 Wis. 535, 547, 154 N. W. 988.

The effect of such former rulings in that regard appears to me to be effectively, although not expressly, done away with by the ruling in the instant case.

I think the issue thus presented in the proposed question was an essential one under the facts in this case to make a proper special verdict, should have been presented, and, in view of the evidence to the effect that such device was in operation at the particular time, refusal to so submit was

prejudicial error for which a new trial should have been granted.

The appellant moved for a rehearing.

In support of the motion there was a brief by *Simmons & Walker* of Racine, attorneys for the appellant, and *Edgar L. Wood* of Milwaukee and *Addison L. Gardner* of Chicago, of counsel.

In opposition thereto there was a brief by *Storms, Foley & Beck,* attorneys for the respondent, and *William W. Storms,* of counsel, all of Racine.

The motion was denied, with $25 costs, on September 25, 1920.